## Rufus Hosmer and Another v. John B. Wilson.

Where an article was ordered of a manufacturer at a specified price, and work was done and materials used towards its construction, but before it was completed the order was countermanded, and the materials remained in the manufacturer's hands, — *Held*, That the manufacturer could not recover on the common counts the value of such labor and materials, but should sue on the special contract, and claim his damages for the breach, or for being wrongfully prevented from performing it.

In such a case the defendant has no interest in the materials, and no concern with the amount of the labor; but the plaintiff's labor is upon his own materials, to increase their value, for the purpose of effecting a sale to defendant of the article ordered, when completed.

But the law will not compel the plaintiff, after such countermand, to go on and complete the article ordered before he can recover pay for what he has done, but he may treat the countermand and refusal to take the article ordered as a prevention of performance on his part, and sue upon the contract on that grounds

The value of the labor expended on the materials in such case, is not the proper criterion of the damages for which plaintiff is entitled to recover. Such labor may have enhanced the value of the materials, in which case the plaintiff, still owning them, is compensated to the extent of such enhanced value; or it may have diminished such value, and then payment for the labor will not be adequate compensation. Whether the labor has enhanced or diminished the value of the materials, is necessarily a question of fact for the jury in estimating the damages sustained.

*Heard October 5th.　Decided October 17th.*

Error to Wayne Circuit. The action was originally brought by Wilson against Hosmer & Kerr, in Justices' court. The declaration was in assumpsit, as follows: "For work and labor done, and services rendered, and materials furnished, by plaintiff and his servants for defendants, all at request of said defendants."

The cause was brought into the circuit court by appeal, and on the trial in that court, before a jury, the plaintiff introduced James A. Noble as a witness, who testified:

That, in the month of August, 1858, he was the clerk, book-keeper, and (in his absence) general manager of the plaintiff, who then carried on an iron and brass foundry, at Detroit; that, on the 5th day of said August, John A. Kerr, one of the defendants, called at the foundry, in the absence of the plaintiff, and there signed a written order drawn up by the witness, and introduced and read in evidence, a copy of which is as follows:

"AUGUST 5th, 1858.

"Hosmer & Kerr, Lansing, Michigan, want a 5 1-2 inch engine, as soon as he can get out, to stand uprightly. The price to be 230 dollars, and to be paid, when taken out of of the shop.      "HOSMER & KERR."

That witness, on behalf of the plaintiff, accepted the order, and undertook and agreed to make an engine for defendants, on the terms proposed in said order; that plaintiff returned next day, and immediately commenced on the work ordered by defendants, and proceeded with it until the 18th day of said August, when a letter was received from the defendants, of which the following is a copy:

"Mr. J. B. WILSON, *Dear Sir:*—We countermand our order for a steam engine. We should be pleased to have taken it, but we do not need it, having purchased one that will suit us better.      Yours Resp'y,

"HOSMER & KERR."

That previous to that time, and in fulfillment of the order of the defendants, all the articles, specified in the plaintiff's bill of particulars, were made, and the work and labor therein mentioned was done.

The following is a copy of said bill of particulars:

To casting cylinder, 100 lbs., steam chest and cross
    head, 40 lbs., at 5c. . . . . . . $ 7 50
" pillow block, 27 lbs., piston rings and followers,
    26 lbs.,—53 lbs., at 5c. . . . . . 2 65

| | | |
|---|---:|---:|
| To casting engine frame, 266 lbs., pump, 9 lbs., crank, 25 lbs., — 300 lbs., at 5c. | $15 | 00 |
| " fly-wheel, 138 lbs., governor stand and balls, 30 lbs., — 168 lbs., at 5c. | 8 | 40 |
| " connecting rod and piston rod, 18 lbs., at 5c. | | 90 |
| " wrist pin, 4 lbs., valve nuts, 2 lbs., bolt for pillow block, 2 lbs., — 8 lbs., at 5c. | | 40 |
| " bolts and nuts, two keys, 2 lbs., at 5c. | | 10 |
| " patt'n for engine frame, 2 days and 4 hours, at $3, | 7 | 20 |
| " man's time planning, 4 days and 4 1-2 hours, at $4, | 17 | 82 |
| " men and lathe, turning and boring and drilling cylinder, piston and piston rings, connecting rod, piston rod, valve, cranks, &c., 6 days and 3 hours, at $4, | 25 | 20 |
| " men's time, vice work and setting, 5 days and 3 hours, at $3, | 15 | 90 |
| " brass casting for connecting rod and sides, governor and pump valve, 14 lbs., at 50c. | 7 | 00 |

$108 07

The witness testified that the prices charged in said bill, were the usual and customary prices, at Detroit, for doing the work and furnishing materials for such articles; that after the letter of defendants, countermanding their order, nothing further was done towards the completion of said order, and that neither the engine, nor any of the articles mentioned in said bill, were delivered to said defendants.

The testimony of the witness was taken subject to objection by defendants, who claimed that under the circumstances detailed by the witness, the plaintiff could not recover — his declaration being for work and labor done, and materials furnished

The witness, on his cross-examination, testified: That the prices charged in said bill, were the same prices which would be charged any person who should order

HOSMER v. WILSON.

the like articles made at plaintiff's foundry. He also testified that, from the order given by defendants, an engine, such as defendants wanted, could be built, without any further specifications or instructions.

Delos E. Rice was also called as a witness for plaintiff, and testified: That he was and had been, for several years, in the foundry business, and that the prices charged in the plaintiff's bill of particulars were the usual prices.

On cross-examination, he testified that the prices charged were the usual prices for which said articles would be manufactured and sold. He also testified that the articles mentioned in plaintiff's bill, were such as might be used in the construction of any other engine of the same dimensions as that ordered by defendants, and that engines of those dimensions were often called for.

On re-examination, the witness testified that the prices charged in the plaintiff's bill, were the usual prices where all parts of a complete engine were made, but that when separate pieces were made, or not a complete engine, the prices of *some* of the articles would be from thirty to fifty per cent. higher: That those prices included the value of the materials, and also of the work done, and that in making the charges, there would be taken into consideration the labor of hands, use of machinery and tools, fuel consumed, superintendence, &c. He also testified as to the value of the materials, apart from the work and labor done.

The defendants introduced in evidence two letters from the plaintiff, which they claimed relieved them from the obligation to take the engine, and justified their countermanding the order for it. These letters do not become important to an understanding of the point passed upon in the case.

The defendants requested the court to charge the jury, among other things:

1: That, though they should find that plaintiff's agent

7 Mich—U.

accepted the order of defendants, at the time it was given, unless there were sufficient specifications of the engine to be built, to enable the plaintiff to finish the engine, without further instructions, then the order of the defendants and the acceptance by the plaintiff's agent constituted no contract between the parties.

2: That, if they should find that the articles specified in the plaintiff's bill of particulars were made, and the work and labor therein mentioned was done by the plaintiff, under, and in fulfillment of, an agreement to construct an engine for the defendants, out of materials furnished by plaintiff, and, in consequence of the defendants countermanding their order, said engine was never completed, and that said articles were never delivered to or accepted by said defendants, their verdict should be for defendants.

3: That, admitting the facts to be as testified to by plaintiff's witnesses, he could not recover under his declaration, but should have declared specially against the defendants, for refusing to perform their agreement.

But the court refused to charge as requested by defendants; but charged the jury:

1: That, if they should find that the defendants' order was accepted by plaintiff's agent, and that from that order the general form, size, and plan of the engine could be understood, and an engine constructed from that description, such order and acceptance constituted a contract between the parties, although specifications or instructions might be needed to enable the plaintiff to construct an engine in all particulars as desired by defendants.

2: That the plaintiff, under his declaration, could not recover for the materials used in the construction of the articles mentioned in his bill of particulars, but might recover for the work and labor proved to have been done in the making of, and upon said articles, prior to the countermand.

To which charge, and the refusal to charge as requested, the defendants excepted.

The jury rendered a verdict for plaintiff for eighty - eight dollars, and defendants brought error.

*Jerome & Swift* for plaintiffs in error.

Unless, by the order of plaintiffs in error, the thing to be done was so clearly specified that Wilson could know what to do (and his letters show it was not), such order and its acceptance could not constitute a contract. There could not be that mutual assent of the parties which is the very essence of a contract, when the parties did not know what they had agreed upon.

In no view of the case could plaintiff, on the facts proved, recover under the common counts.

The work and labor was done and performed by the plaintiff below for his own benefit, and was to go into, and form part of the value of, the engine which he had contracted to sell. The articles he made he has on hand, and can dispose of, or use in the construction of another engine. The property in the articles has not vested in the defendants, neither have they a right to take them away. The authorities do not justify this action. — 1 *Chit. Pl.* 348; *Atkinson v. Bell,* 8 *B. & C.* 277; *Allen v. Jarvis,* 20 *Conn.* 38; *Moody v. Brown,* 34 *Me.* 107.

*Towle, Hunt & Newberry* for defendant in error.

The first instruction asked by defendants was properly refused, as calculated to mislead the jury. — 2 *Pet.* 625. The question to be submitted was simply whether *any* engine could be constructed from the description given; not whether *this particular* engine could.

Plaintiff below was entitled to recover on the common counts for the *labor* performed by him. — 5 *Mich.* 451; 3 *Mich.* 55; 1 *Rich.* 199; 9 *Bing.* 14; 2 *M., G. & S.* 336; 36 *Eng. L. & Eq.* 540; 37 *Ibid.* 428; 20 *Ibid.* 545; 12 *Mo.* 456; 1 *Denio,* 188; 10 *Ired.* 23; 22 *Vt.* 188; 5 *B. Monr.* 129; 1 *Scam.* 410; 24 *Miss.* 663; 2 *Greenl. Ev.* § 104. If we are wrong in this, we submit that the circuit court had

authority to disregard the variance, where the proof showed defendants to be justly indebted, upon a contract *substan- tially* like that declared on, and where defendant (having been served with a bill of particulars) could not have been misled.

We submit also, that plaintiff, by suing for the work and labor expended on these materials, elected to consider them as the property of defendants, and by means of such election they became vested in defendants. So that the labor expended upon them may be said to accrue to the benefit of defendants, and entitle plaintiff to recover on the common counts, under all the authorities.

CHRISTIANCY J. :

Whether the written memorandum signed by the defendants below, when taken in connection with the whole transaction between the parties, was understood by all of them as a contract, might have been a fair question of fact for the jury. But admitting the contract to have been proved in all respects as claimed by the plaintiff, and that defendants below wrongfully countermanded the order for the engine, after the plaintiff had, in good faith, made most of the castings, and done a large part of the work; the first question which arises is, whether the plaintiff was entitled to recover upon the common counts for work and labor, as upon a *quantum meruit?* As to the materials it is admitted he could not, though contained in the same count; as they still belonged to plaintiff, and were never delivered to defendants.

In the case of a contract for a certain amount of labor, or for work for a specified period — when the labor is to be performed on the materials or property, or in carrying on the business, of the defendant, or when the defendant has otherwise accepted or appropriated the labor performed, if the defendant prevent the plaintiff from performing the whole, or wrongfully discharge him from his employment,

or order him to stop the work, or refuse to pay as he has agreed (when payments become due in the progress of the work), or disable himself from performing, or unqualifiedly refuse to perform his part of the contract, the plaintiff may, without further performance, elect to sue upon the contract and recover damages for the breach, or treat the contract as at an end, and sue in general assumpsit for the work and labor actually performed. — *Hall v. Rupley*, 10 *Barr*, 231; *Moulton v. Trask*, 9' *Metc.* 579; *Derby v. Johnson*, 21 21; *Canada v. Canada*, 6 *Cush.* 15; *Draper v. Randolph*, 4 *Harrington*, 454; *Webster v. Enfield*, 5 *Gilm.* 298.

And in such cases he may, it would seem, under the common *indebitatus* count, recover the contract price, where the case is such that the labor done can be measured or apportioned by the contract rate; or whether it can be so apportionated or not, he may under the *quantum meruit* recover what it is reasonably worth. But in all such cases, the plaintiff, having appropriated and received the benefit of the labor (or, what is equivalent, having induced the plaintiff to expend his labor for him, and, if properly performed according to his desire, the defendant being estopped to deny the benefit), a duty is imposed upon the defendant to pay for the labor thus performed. This duty the law enforces under the fiction of an implied contract, growing out of the reception or appropriation of the plaintiff's labor.

It is therefore evident, 1st: that in all the cases supposed, an implied contract would have arisen, and the plaintiff might have recovered upon a *quantum meruit*, if no special contract had ever been made. 2d: That in the like cases (where the value of the work done could not, as it probably could not in the case before us, be apportioned by the contract price) the value or fair price of the work done, would *necessarily* constitute the true measure of damages. And in all such cases, as first supposed, either the contract price, or the reasonable worth of the labor done, would measure the damages.

Similar considerations and like rules would, doubtless, equally apply to contracts for furnishing materials, and for the sale and delivery of personal property, when, after part of the materials or property has been received and appropriated by, or vested in the defendant, he has prevented the plaintiff from performing, or authorized him to treat the contract as at an end, on any of the grounds above mentioned.

But the case before us stands upon very different grounds. Here the contract, as claimed to have been proved, was in no just sense a contract for work and labor, nor could the plaintiff, while at work upon the engine, be properly said to be engaged in the business of the defendants. It was substantially a contract for the sale of an engine, to be made and furnished by the plaintiff, to the defendants, from the shop, and, of course, from the materials of the plaintiff. The defendants had no interest in the materials, nor any concern with the amount of the labor. They were to pay a certain price *for the engine* when completed. Engines, it is true, are not constructed without labor; the labor, therefore, constitutes part of the value of the engine. But this would have been equally true if the contract in this case had been for an engine already completed.

The labor of the plaintiff was upon his own materials, to increase their value, for the purpose of effecting a sale to defendants when completed. No title in any part of the materials was to vest in defendants till the whole should be completed by plaintiff, and delivered to defendants. The plaintiff might have sold any of the materials, after the work was performed, or the whole engine when completed, at any time before delivery to, or acceptance by defendants.

Whether, therefore, the labor actually performed on these materials, when the defendants refused to go on with the contract, or prevented the further performance, had enhanced or diminished the value of the materials, and how much, would be a necessary question of fact, in arriving at

any proper measure of damages. The value of the work and labor does not, therefore, in such a case, constitute the proper criterion or measure of damages. If the value of the materials has been enhanced by the labor, the plaintiff, still owning the materials, has already received compensation to the extent of the increased value; and to give him damages to the full value of the labor, would give him more than a compensation. If the value of the materials has been diminished, the value of the labor would not make the compensation adequate to the loss. It could be only in the single case where the materials have neither been increased nor diminished by the labor, that the value of the labor would measure the damages. Such a case could seldom occur, and whether it could or not, it must always be a question of fact in the case, whether the value of the materials does remain the same, or whether it has been increased, or diminished, and to what extent.

Again, as the defendants never received the engine, nor any of the materials, the title and possession still remaining in the plaintiff, and the defendants never having received or appropriated the labor of the plaintiff, if the same work had been performed under the like circumstances, without any actual or special contract, the law would have imposed no duty upon the defendants, and therefore implies no contract on their part to pay for the work done.—1 *Chit. Pl.* 382; *Atkinson v. Bell*, 8 *B. & C.* 277; *Allen v. Jarvis*, 20 *Conn.* 38.

The only contract, therefore, upon which the plaintiff can rely to pay him for the labor, is the special contract. No duty is imposed upon the defendants otherwise than by this. This contract, therefore, must form the basis of the plaintiff's action. He must declare upon it, and claim his damages for the breach of it, or for being wrongfully prevented from performing it. His damages will then be the actual damages which he has suffered from the refusal of the defendants to accept the articles, or in consequence

of being prevented from its performance; and these damages may be more or less than the value of the labor. This case, therefore, in this respect, comes directly within the principle recognized in the case of *Atkinson v. Bell*, above cited, and in *Allen v. Jarvis*, 20 *Conn.* 38 (a well reasoned case, which we entirely approve). And see *Moody v. Brown*, 34 *Me.* 107, where the same principle is recognized.

But it was claimed by plaintiff's counsel that no action could have been maintained on the special contract until fully performed, and the engine delivered or tendered to the defendants; that the unqualified refusal of the defendants to take the engine, when it should be completed, was not a prevention of performance which would authorize the plaintiff to sue upon the contract on that ground. We think it was, and that such absolute refusal is to be considered in the same light, as respects the plaintiff's remedy, as an absolute, physical prevention by the defendants. This view will be found fully sustained by the following cases: *Cost v. Ambergate Railway Co.* 6 *E. L. & Eq.* 230; *Derby v. Johnson*, 21 *Vt.* 21; *Clark v. Marsiglia*, 1 *Denio*, 317; *Hochster v. De Latour*, 20 *L. & Eq.* 157. In the latter case, it was held that a refusal of the employer before the work commenced, to allow it to be done, authorized an immediate action upon the contract.

So, a refusal to make any payment, which, by the contract, is to be made during the progress of the work, has the same effect.—*Draper v. Randolph*, above cited; and see *Hoagland v. Moore*, 2 *Blackf.* 167; *Webster v. Enfield*, 5 *Gilm.* 298; *Withers v. Reynolds*, 2 *B. & Ad.* 882. See this whole subject ably discussed, and the authorities cited, in 2 *Smith's Lead. Cas.* (*Amer. Edit.*) 22 to 38; and for what will amount to prevention, see note of Hare & Wallace to same, 40. As to mode of declaring on the contract,—*Ibid.* 41, *and* 1 *Chit. Pl.* 326.

It would be unreasonable and unjust to hold that the plaintiff, in this case, after the positive countermand of the

defendants' order, was, nevertheless, bound to go on and complete the engine, and thereby increase the damages, before he could recover for the work already done. The defendants can not complain that the plaintiff has given credit to their assertion. The law will not require a vain thing. And it is certainly, in such cases, much better for both parties to hold the party thus notified to be fully justified in stopping the work, as it lessens the damages the other party has to pay, and relieves the party who has to do the work from expending further labor, for which he has fair notice he is to expect no payment. And it is certainly very questionable whether the party thus notified has a right to go on after such notice, to increase the amount of his own damages. In *Clark v. Marsiglia*, above cited, it was held he had no such right, and that the employer has a right (in a contract for work and labor) to stop the work, if he choose, subjecting himself to the consequences of a breach of his contract, and that the workman, after notice to quit work, has no right to continue his labor, and recover pay for it. This doctrine is fully approved in *Derby v. Johnson*, above cited. This would seem to be good sense, and therefore sound law. And it would seem that any other rule must tend to the injury, and, in many cases, to the ruin of all parties.

It is unnecessary here to review the authorities cited by the plaintiff's counsel. Most, if not all of them, when carefully examined, will be found entirely in harmony with the views above expressed. The result of them will be found well and fairly stated, and evidently from a careful examination, in *Allen v. Jarvis*, above cited. I have made the same examination, and come to the same result.

It may, however, be proper here to say, that in the case of *Planché v. Colburn*, 8 *Bing*. 14, upon which much reliance was placed by the counsel for the defendant in error, there was a special count upon the contract, as well as the common counts, and it may be inferred from the

opinion, that the plaintiff was allowed to retain his verdict upon the special count. And we have the high authority of Lord Campbell that such was the case.—See *Hochster v. De Latour*, 20 *E. L. & Eq.* 163, above cited. As the conclusion at which we have arrived upon this point disposes of the whole case, it becomes unnecessary, and even improper, to discuss the other questions raised in the case.

And, as we do not conceive that under a writ of error we have any power to amend the declaration in this respect, the judgment must be reversed.

The other Justices concurred.