## Eber B. Ward v. William Warner and another.

The general nature of the action of assumpsit considered.

A canal through a marsh in which a stream is lost, cut by private individuals through the land of one of them, for the purpose of affording floatage for timber and lumber through the same in connection with the stream—there being no evidence that the waters of the stream ever ran along its line, or that it was the improvement of an existing water channel—is a *private* way, and the public are not entitled to use it, unless it be dedicated to their use.

The owner of the land on which such canal was dug, and who appeared to have incurred the major part of the expense of making it, gave notice to other individuals who had contributed to its repair, that they must compensate him for its use at a rate which he specified in his notice; and on their refusal and continuing its use under a claim of right to do so, brought action in assumpsit to recover compensation for the ? use.—*Held*, that the action could not be maintained.

The law will not imply a promise to make compensation for the use of the canal before the notice was given, and while it was permitted by the plaintiff without objection, and without demand of compensation.

Nor will the law imply such a promise after the notice, since any implication of a promise is precluded by the denial by defendants of all right to compensation, and the assertion of an adverse right in themselves. The adverse entry, if the claim of right is unfounded, is a naked trespass, upon which no duty to compensate arises which can be converted into a contract.

*Heard October 28th 29th, and November. 2d, 1859, Decided October 13th.*

Error to Wayne Circuit.

Ward brought assumpsit in the court below, against William Warner and Albert L. Catlin, and declared for the use by defendants of a certain canal across lands of the plaintiff, in St. Clair county, in floating the logs and lumber of the defendants in and through the same. On the trial, the following stipulation was read in evidence.

"In the Circuit Court for the county of Wayne: Eber Ward v. Albert L. Catlin and William Warner.

It is hereby stipulated that on the trial of this cause it shall be admitted as follows:

That in 1853, the plaintiff, Willard Parker, and some other gentlemen interested as owners of pine lands on Mill Creek, conferred together about opening or digging a canal at the spot where the canal now claimed by the plaintiff was afterwards built. That, with a view of car-

rying out this idea, plaintiff bought certain lands through which the canal now runs, a part at the Swamp Land sale in the fall of 1853, and a part, being primary school lands, in 1854. That the legal title of said lands is still in the plaintiff. That in the summer of 1854, the plan was settled as follows: It was estimated that the entire cost and outlay, of carrying out the entire enterprise, would be $5000, which sum was divided into five equal shares, of which the plaintiff was to pay one, Willard Parker one, the Messrs. Moore one, Messrs. Smith & Dwight one, and the remaining fifth it was supposed might be paid by other parties. And the parties whose names are above mentioned all agreed to the same. That after this was so agreed on, the plaintiff proceeded and made a contract for building the canal, and cleaning out a part of Mill Creek [of which a copy was attached], and plaintiff paid therefor $5,000, the contract price.

That the said Parker and the Messrs Moore paid to the plaintiff $1000 each, as their share of the said outlays, and said Smith & Dwight have always acknowledged their liability so to do, but having failed in business, have been unable so to do.

That the object of making the said canal, was to concentrate and confine in a channel, so as to afford floatage for logs and rafts, the waters of Mill Creek, which then in that locality were spread and diffused over a large marsh. That said canal was dug, and the waters of said creek drawn through it, in 1854, and have so continued to run ever since; and it now constitutes the bed and channel in which said water of said creek runs.

That the waters of Mill Creek were, before the building of said canal, navigable both above and below said marsh, and said canal operated to carry said waters in a navigable channel through said marsh. That said canal is about two miles long, about sixteen feet wide, and four feet deep.

That large amounts have been expended by different individuals, in cleaning out the channel of said creek, both above and below the said canal.

That, in 1855, it was found necessary that the upper end of the canal should be enlarged, to make the navigation more practicable, and that Mill Creek below the canal should be improved; and that for these purposes the expenditure of $1000 was necessary. This work was done, and the amount contributed by the said Parker, the plaintiff, the Messrs. Wrights and the defendants, each paying $250. Of this $1000, about $250 was expended in the upper end of the canal itself; the balance in the creek below. The plaintiff took no active part in having this work done. Mr. Willard Parker advised it, and plaintiff agreed to pay one-fourth its cost. Mr. Parker himself procured the other contributions. He also employed and paid the workmen, and superintended the work. The plaintiff paid the $250 to Mr. Parker, or upon his order.

That the first intimation the defendants had that claims were made against any persons for the use of said canal, was derived from the printed notice [copied below, marked B] which was posted in June, 1857. That no claim was made on defendants personally, till August, 1857, when an account was sent them, and payment demanded. A letter of Towle, Hunt & Newberry was handed them about September 4th, 1857, a copy of which, and of the answer thereto, are given below, marked C and D. That defendants never assented to any liability to pay for the use of the said canal, but always claimed a right to the free navigation of the same." [The stipulation then gives the quantity of logs run by defendants through the canal, in 1856, 1857 and 1858, specifying the amount before and after the demand of payment, and gives a statement from which it appears that plaintiff expended in buying said land, and in and about work on said canal, $7302,03, and received upon the same from Parker, Carlton, Smith and Moore, and Moore & Foote, $3091,48].

The following is the notice, marked B.

"Notice. All persons who have run logs through the canal made by E. B. Ward and others, in St. Clair and Lapeer counties, connecting Mill Creek, are hereby notified that they will be charged 25 cents per 1000 feet for all logs that have heretofore been run or that may hereafter be run through said canal, until the tolls are paid in advance, or arranged for with the subscriber.

Parties owning lands above the canal may commute by paying a fair *pro rata* proportion of the cost of said canal, for the privilege of running logs from specified lots without paying tolls.

All parties having used the canal during the past year, are hereby requested to call at their earliest convenience, and settle the tolls now due.

E. B. WARD."

DETROIT, June 1, 1857.

*Letter marked C.*

"DETROIT, September 4th, 1857.

GENTLEMEN: E. B. Ward has placed in our hands, for collection, a claim against you for the use of his private canal in Lapeer and St. Clair counties. As you are well aware, he expended some $7000 or $8000 in those improvements, and in common justice and honesty, those who are benefited by it ought to have honor enough to pay their proportion of such outlay, or a reasonable sum for the quantity of logs they have run through the canal. Had *you* built such a canal, and others used it, most certainly you would have thought you had a fair claim for payment. Unless these claims against you and others are settled upon a reasonable basis, either payment by the thousand for logs run through, or a share of the expense of building the canal, according to the amount of land benefited, we shall be compelled to put the matter in suit, and the canal will be permanently closed. We hope that your own sense of justice will influence you to offer fair terms of arrange-

ment, which will be met in the same spirit." [Signed, &c.]

*Reply, marked D.*

"DETROIT, September 5th, 1857.

TOWLE, HUNT & NEWBERRY,

*Detroit, Michigan:*

GENTLEMEN: Your letter of the 4th instant, relating to the claim of E. B. Ward, Esq., against us, for the use of the canal mentioned, was duly received, and in reply we have to inform you, and through you, Mr. Ward, that we do not admit any liability whatever arising from the use of that ditch, and decline complying with your request.

It may so happen that our business, as a firm, now constituted, will not make it necessary for us to use that ditch in the future; but should it become necessary, we do not expect that Mr. Ward will take on himself the responsibility of refusing us its full and free use in common with himself and others, and without charge.

Respectfully and truly yours,

WILLIAM WARNER & Co."

In addition to these documents, plaintiff introduced evidence, tending to show that the marsh through which the canal was dug was not, before that time, navigable for logs, or rafts, or boards; that it was extensive, covering about one third part of a township; and that the stream above had never been used for floating logs before the canal was constructed. He also gave evidence of the great value of the canal to the owners of timbered lands near it, and as to what would be a fair compensation for the use of the canal. The defendants proved by a witness that, before the canal was made, the creek was lost in the marsh for a distance of some two miles; that there were in the marsh one or two open spaces filled with water, and he thought that perhaps the channel of the creek had been, at some former time, at those spots.

WARD v. WARNER.

The court instructed the jury:

1. In order that the plaintiff shall recover, he must show that there has been a promise, either express or implied, on the part of the defendants, to pay for the use of the canal. It is not claimed that there is an express promise. The question, then, is, was there an implied promise ?

2. If it were shown that Mill Creek ended in the marsh, and that a new distinct stream came out below, then it might be that the plaintiff, on digging a canal through the marsh over land owned by him, might forbid parties using the canal, unless they would agree to pay for such use. But if the jury believe, from the evidence, that there had been at some former period a continuous channel through what is now a marsh, which has been by some natural means nearly filled up, and the waters diffused over the marsh, and that the canal which was dug by the plaintiff had the effect simply to concentrate the waters of Mill Creek, into one body, then the plaintiff can not require pay for the use of such canal, or debar others from using it on their refusing to pay.

3. Even if the plaintiff could require pay for such use, yet if the jury believe from the evidence that the defendants used the canal for floating logs, and that on being required to pay for such use, they refused, and denied the right of the plaintiff to charge therefor, and claimed the right to use the canal free of charge, then no promise to pay can be implied. The defendants were at the most but trespassers, and no action of assumpsit will lie against them.

The plaintiff excepted to these instructions, and requested the court to charge the jury:

1. That if the jury believe, from the evidence, that Mill Creek was lost in the marsh, or the waters so diffused that that they were not navigable for logs or boats for a distance of two or three miles, but had made their way

through the marsh, in a great number of small rivulets or streams, and that they had been so for a long period of years, and that the said marsh had never been used for navigating logs, then the said marsh or its waters were not "public" within the meaning of the law, and the plaintiff, owning the land, owned the waters exclusively, subject only to the rights of other persons to the use of the water on their own land, and their right to have the waters continue to flow through the marsh as they had always done.

2. If the jury believe, from the evidence, that the plaintiff created on his own lands the canal in question, and that it was created at a place where there was before no navigable stream through which logs could be floated, and that by means thereof a floating way for logs was afforded, and that the plaintiff has not, as the defendants well knew, dedicated the said canal to the use of the public; then he can recover from the defendants in this action, who shall have used the canal, knowing the said facts, a compensation for such use; such compensation to be, in the absence of any express or implied agreement as to the price, such sum or rate as to the jury shall, from the evidence adduced, seem to be reasonable.

3. If the jury believe, from the evidence, that the plaintiff at any time gave express notice to the defendants, that if they used the canal for running logs, they would be required to pay for such use at the rate of twenty-five cents per thousand feet of logs so run, and that the defendants did afterwards use the canal and run the logs through, then the plaintiff may recover of the defendants at that rate for the logs so afterwards run.

4. That if the jury believe, from the evidence, that the canal was used by the defendants without the express previous consent of the plaintiff, and that their acts amounted to a trespass, yet the plaintiff may waive such trespass, and sue in assumpsit to recover compensation for such use.

5. If the jury believe, from the evidence, that the plaintiff did not obstruct the entrance to the canal, or forbid the defendants absolutely from using it, but on the contrary left the canal open and unobstructed throughout its whole length, but with the intention, as the defendants well knew, to require pay for its use, then such acts on the part of the plaintiff amount to a permission to the defendants to use the canal, and the plaintiff may recover compensation for such use in an action of assumpsit, notwithstanding the defendants may have always denied their liability to pay, and claimed the right to use the canal free of charge.

All which instructions the court refused to give as requested, and plaintiff excepted.

The jury having found for defendants, plaintiff brought error.

*Towle, Hunt & Newberry,* for plaintiff:

Mill Creek not being navigable through the marsh, the party making it so through his own lands, by a canal, may withhold its use from the public, or authorize its use by persons who shall pay a compensation, and withhold it from others :—*Angell on Watercourses,* §§ 539, 540; 2 *Fairf.* 278; 28 *Me.* 554: just as a person might construct a wharf and charge toll for its use:—13 *Wend.* 288.

The acts of plaintiff shown in this case amount to a *license* on his part to all persons to use the canal in floating logs, and he could not bring trespass for such use. The case is analogous to that of a warehouse, or inn, or a dock upon public waters:—See 2 *Watts & S.* 141; 12 *Johns.* 408; 2 *Denio,* 625; 20 *Barb.* 251; *Six Carpenter's Case,* 8 *Coke* 290, 1 *Smith Lead. Cas.* 62.   Or of a private road, over which persons are permitted to pass on paying toll:—8 *Price* 535; 3 *T. R.* 606; 7 *B. & C.* 257; 11 *M. & W.* 827; 8 *Ad. & E.* 99; 6 *Barb.* 265; 2 *M. & S.* 436.

WARD *v.* WARNER.

That defendants claimed a right to use the canal free of charge can not make them trespassers. The license to enter did not depend upon prior payment or promise to pay.

A promise to pay will be implied, notwithstanding the express refusal and claim of right on the part of defendants. They have received a substantial benefit, and the law will *imply* an assumpsit in the absence of an express one. In such a case, a refusal to pay can not avail: the law says he *shall* pay, and the law is paramount: — 6 *N. H.* 499; 2 *Watts & S.* 163; 4 *Cush.* 473; 2 *Fairf.* 278; 2 *Greenl.* 404; 3 *Barn. & Adol.* 411; 13 *Johns.* 240; 6 *N. H.* 298; 3 *Mich.* 566; 1 *Handy,* 459; 9 *N. H.* 494; 16 *Ill.* 160.

Even if defendants were guilty of a trespass, yet plaintiff might waive the tort and sue as upon an implied contract. To this point, counsel cited: — 3 *N. H.* 384; 22 *Vt.* 624; 10 *Mass.* 436; 14 *Penn. St.* 295; 1 *Mo.* 430; 3 *Eng.* 202; 3 *Hill (S. C.)* 248; 13 *Wend.* 139; 1 *Hill,* 234; 1 *B. & C.* 94; 2 *Taunt.* 274; 3 *M. & S.* 192; 1 *Taunt.* 112; 3 *N. H.* 272; 5 *Cow.* 480; 6 *Johns.* 274; 1 *Hempst.* 243; 4 *Eng. L. & E.* 494; 2 *Nott. & Mc.* 156; 16 *Ill.* 106; 9 *N. H.* 494; 6 *Johns.* 46; 13 *Johns.* 489; 4 *Dana,* 295; 3 *B. & Adol.* 411; 2 *Strange,* 1239; 1 *Wils.* 115.

*D. C. Holbrook,* and *G. V. N. Lothrop,* for defendants in error:

It is true that the law sometimes *implies* a promise; but only in cases where the *facts* on which the implication is raised are deemed equivalent to a promise: — 3 *Mich.* 572; 8 *M. & W.* 120, *and note.*

If it were otherwise, we should have the extraordinary spectacle of the law creating promises for a man entirely independent of his action.

Hence it has been decided, that the law will not imply a contract against a man's express declaration: — 7 *Mass.* 107.

And our own Supreme Court, governed by the same principle, have held that, where an express promise existed, no *implied* could be set up: — 1 *Doug. Mich.* 335; see also 1 *C., M. & R.* 312.

But there are a certain class of cases where it is said, to adopt the usual expression, that "tort may be waived and assumpsit maintained." The expression is in itself vague, and has often been vaguely employed. It imports no limitation in itself, and has sometimes been applied with considerable latitude.

The doctrine, so far as our observation extends, is first declared in a case in Lord Raymond's Reports, where it was held that securities being unlawfully *detained and sold*, the plaintiff might "*dispense with the wrong, and suppose the sale made by his consent*," and bring an action for money had and received: — 2 *Ld. Raym.* 1216. This doctrine was sanctioned by Lord Mansfield, in *Doug.* 138; *Cowp.* 416; *Ibid.* 372. A careful comparison of these cases will show that Lord Mansfield did not extend the doctrine beyond this: that the action might be maintained for the *proceeds of the goods sold.*

In *Bennet v. Francis,* decided in 1801, Ch. J. Alvanley, after reviewing the cases, affirms that "all that is to be collected from the cases is this, that if the goods be converted into money, the court will allow the plaintiff to waive the tort, and to bring an action in which he can recover no more than the sum actually received."

In this country there has been much latitude of *dictum,* and unquestionably some of decision. But a summary of the cases will show a great preponderance of authority in favor of the rule as above laid down. The cases can be generally classified as follows:

1. That where goods have been taken tortiously and *sold,* the plaintiff may waive the tort and sue in assumpsit for the proceeds, and not otherwise: — 5 *Pick.* 285; 12 *Pick.* 123; 22 *Vt.* 624; 3 *Watts,* 277; 1 *J. J. Marsh.*

543; 3 *Dana*, 552; 12 *Geo.* 422; 6 *Rich.* 159; 13 *Ill.* 688; 3 *Wis.* 649; 4 *Chand.* 166; 2 *R. I.* 418; 2 *Scam.* 317.

2. There is another class of cases, the principle of which, so far as any can be discerned, is this; that though the taking of goods was tortious, yet if they may be valuable to the defendant, their value may be recovered in an action of assumpsit; generally on a count for goods sold and delivered: — 3 *N. H.* 384; 3 *Eng.* 202.

In each of these cases the defendants came lawfully into possession of the goods, but converted them to their own use, and a recovery was allowed on counts for goods sold and delivered. On such facts perhaps it is reasonable to imply a promise to pay the value of the goods: — See also 14 *Penn. St.* 295; 15 *Ohio*, 9; 1 *McMullen*, 21.

In some of the above cases it is said, that a man shall not be permitted to say he committed a wrong, in order to exclude the implication of a promise. This, we think, poor talk for Judges. If it had any force or reason it would make assumpsit concurrent with every tort. It would also make *implied* promises mere fictions of law.

The theory of our remedies is grounded in the idea of a substantive difference between contracts and torts. And such is the truth. Fictions of law are only excusable when necessary for justice. When, however, our remedies are complete without them, and when they confound both reason and language, they ought not to be tolerated.

The right of waiver and election is a very limited one, and it extends only to personal property, or to the value of the services of servants, &c. It is not permitted in cases of trespass on lands — and *a fortiori*, it can not be where the alleged trespass is made under a claim of right: — 6 *S. & R.* 476. The action of *assumpsit for use and occupation* furnishes a large class of cases in illustration of this position. It is held everywhere that this action does not lie where there is a claim of adverse right. And not that only, but that the relation of landlord and tenant (which

is a relation of contract) is necessary to sustain it: — 13 *Johns.* 489; 15 *Barb.* 36; 11 *Pick.* 1; 6 *N. H.* 298; 3 *S. & R.* 500; 2 *Nott & Mc.* 156; 1 *O. S. R.* 222; 30 *Me.* 58; 35 *Me.* 200; 6 *Ind.* 412; 15 *Ill.* 61; 16 *Ill.* 24; 16 *Ill.* 145; 16 *Ill.* 26; 16 *Ill.* 106; 19 *Geo.* 313; 24 *Ala.* 420; 26 *Miss.* 94; 5 *Eng.* 602.

MARTIN CH. J.:

The first question presented, and which disposes of this case, is whether, upon the facts, assumpsit will lie, or whether the plaintiff's remedy, if he have any, be not trespass.

Whenever a benefit accrues to a party, whether for services rendered, money expended, or property used, or from any other cause, upon which a duty to make compensation to another arises, the law will, in the absence of an express promise to make such compensation, imply one from the transaction and the duty. Thus if A performs labor or renders services for B, at the latter's request, or with his knowledge and assent, but without a contract for compensation, the law will imply a promise by B to pay A therefor what such labor or services shall be reasonably worth. So when the goods of A have been wrongfully taken or held by B, and sold, although the act of B in taking them, or in their conversion, may have been tortious, yet as he has sold them, and received a benefit from such conversion, A may waive the tort, and bring assumpsit for the price for which they were sold. So when a party enters upon land under a contract to purchase it, which is not performed, and such party is, after such failure of performance, notified that, if he remains in possession, he will be required to pay rent; if he remain, the law will imply a promise to pay rent from the time of such notice. But in the latter case, there can be no promise implied to pay rent for the occupation while the contract was in force, because no payment of rent could, during that time, have been in the contemplation of either party, and no such duty existed. And

where one has the clear right to the use and control of property, and permits its use by others, upon condition of payment therefor, when the condition is specific in terms the law will imply from the use by one having knowledge of the terms an assent to them, and a corresponding promise to pay; and when not known, a promise of reasonable compensation. In the first case, the implication is founded upon the knowledge of the terms and conditions of the use, and in the latter upon the duty arising from the use; but in neither will it be made, when the party using it asserts adverse rights, and acquires and uses the property under an adverse claim of right. These are principles which, notwithstanding the diversity of opinion upon kindred questions, are clearly settled and recognized. But we are not aware of any principle upon which it can be held, that a mere naked trespass can be made the basis of an implied assumpsit. If the trespass be proved, no presumption of an agreement for compensation can be raised; for the act of an entry upon lands is in contravention of, and not in subordination to, the rights and claims of the party injured. For such injury the law has given a different remedy; and one founded upon the injury; and no promise can be implied to pay, but a liability arises to compensate for the wrong and injury.

It was said in *Hosmer v. Wilson*, 7 *Mich.* 294, that the liability, in cases of implied promises, is founded upon a duty which the law imposes upon the party receiving the benefit, to pay; and that this duty the law enforces under the fiction of an implied contract; and *Martin B.* in *Clay v. Yates*, 36 *E. L. & E.* 546, in speaking of the liability, says: "I should say the duty of the man to pay arises out of the transaction itself; and think this is a more correct expression than talking of an implied contract, when a contract was never made."

If, therefore, the plaintiff has a right to require com-

pensation for the use of his canal prior to the notice of June 1st, from the simple fact that the defendants have used it, then a duty arises upon their part to pay such compensation, and the law will imply a promise to pay: but if he has no such right, no duty to pay arises from the assertion of such right, or from the fact of the use. Now the canal, upon the case presented, was clearly a private way. It is true that it was dug by contribution, and was for a time thrown open to all passers; and perhaps still is, to those who contributed towards its construction, or those who have since contributed towards keeping it in repair. But it was nevertheless upon the land of the plaintiff. No evidence exists, tending to show that the waters of Mill Creek ever ran along its line, or that it was the improvement of an existing water channel. Indeed, the contrary is evidently the case; and the fact that it was dug through a marsh (the land belonging to the plaintiff) in which the creek was lost, does not render it a part of the stream, so as to confer upon the public any rights of way along it.

It exists, then, as a way or passage, opened by the plaintiff, and which he might dedicate to the public, or reserve for his private use at his option. Whether those who joined with him in its construction have or have not the right of passage along it, or what their rights may be, are questions not before us; but so far, at least, as all others are concerned, no such right exists; for no dedication to the public is shown; nothing more than a sufferance of its use, which he might revoke at any time. For its use, while this permission existed, he had no right to demand compensation, nor will the law raise a duty to pay it.

But he had a right to require payment or compensation, before he would at any time suffer its use by individuals upon whom the right had not been specially conferred; and in such case, those using it would be liable

to pay therefor according to the terms imposed, if assented to, or if used under circumstances from which the law would imply assent. In *Wadsworth's administrator v. Smith*, 11 *Me.* 278, which was assumpsit on an account for slipping logs along a stream which had been made floatable for logs and lumber by the application of artificial means at the expense of the owner, while the right to exact toll was questioned, it was held that a proprietor may open a passage through his land for his own accommodation, and he may permit others to psss it under an agreement for compensation which may be enforced at law. "He may yield the enjoyment to one and refuse it to another. If he receives compensation for such enjoyment, the law will permit him to retain it; if he accept a promise as an equivalent, the law will enforce it, and a promise may as well be implied in such a case as in any other."

The plaintiff, therefore, having, until the giving of the notice of June 1st, suffered the public to pass along his canal without objection, or making any demand for compensation, must be confined to his claim upon such use of the canal as occurred after such notice.

For the purpose of a revocation of the general license, and a declaration that compensation would thereafter be demanded, the notice, having come to the knowledge of the defendants, was sufficient and competent to impose upon them a liability to pay for its use, according to the terms of the notice, if subsequently used, had the right to demand any compensation been acknowledged, or recognized and not denied; for in such case the law will presume that they used it upon the terms imposed, and raise the corresponding duty, and imply the contract accordingly. But in the present case, all such implication is precluded by the fact that the defendants denied any right to demand compensation for the ¡use, and used it in defiance of the plaintiff's claim, and under claim of right in

themselves; and they can not therefore be presumed to have acceded to the terms imposed.

If, then, any duty can be implied, it is to pay what such use is reasonably worth. Now, as already remarked, the plaintiff had a right to require payment, as a condition to the use of the canal; and had he required such, but fixed no price, and the defendants had used it with knowledge of such terms, and under the condition, beyond doubt the duty would be raised to pay what such use would be reasonably worth; but if the effect of a denial of the right to demand compensation, and a use of the canal in contravention of the claims asserted by the plaintiff, will prevent the implication of a duty to pay a specific rate imposed, how can it be said that it will still raise the duty of paying according to its worth? If the denial goes to anything, it must go to the whole claim of the plaintiff for compensation, and will preclude every presumption of the recognition of a duty upon which a contract can be implied; while, on the other hand, if the law will imply a duty, it will imply one co-extensive with the terms imposed. It goes to the whole remedy, whether for a specific price, or for reasonable compensation. But the law implies the duty only where the right of dominion over the subject matter is conceded, or not questioned; and never where the use is under an adverse claim of right, or a denial of that asserted. In such case, the entry, being adverse to the plaintiff, is a naked trespass, upon which no duty to compensate, which can be converted into a contract, arises; for such duty can only be implied where the conventional or implied relation of promiser and promisee exists, or where the duty springs from some change of relation after the wrongful act, as in the case of the conversion into money of property wrongfully taken, and the like. If he could be held to be a promiser in such case, under any implication of law, no valid reason can be given why an intruder, under a claim of right, may not be so held in all cases. The con-

clusion can not be avoided that in such a case he can not be regarded in any other light than as a trespasser; for he not only enters upon the property in opposition to the notice of the owner forbidding it, except upon the terms of recognizing and responding to his right to require compensation, but also under the assertion of a claim of right inconsistent with and adverse to that made by the owner.

The subject of tolls, and the right of the plpintiff to collect them, was very elaborately discussed in this case, but, under the views we have taken, it does not become necessary for us to consider, it.

From the views already expressed, it follows that the defendants in this case are mere naked trespassers, and no assumpsit can be implied from their use of the canal; and this view renders it unnecessary to consider any other of the questions raised.

The judgment is affirmed.

CAMPBELL J. concurred. CHRISTIANCY J. also concurred in the result.

MANNING J.:

I think trespass, and not assumpsit, is the proper action. Was the stream navigable before the canal was dug? The defense is that it was, and that defendants, in common with other citizens of the state, had a right to use it to float their logs. The law will not imply a promise in such circumstances, for there is nothing to base a promise upon, as defendants received no benefit from the use of the canal, if their defense be true.

Assumpsit for money had and received is an equitable action, and may be brought when one person has money in his hands that in equity and good conscience belongs to another. But that is not this action, which is assumpsit to recover compensation for the use of plaintiff's canal, and, like assumpsit for goods sold and delivered, or for

work and labor, will lie only on a promise, express or implied.

When plaintiff's goods have been wrongfully taken, it is said he may waive the trespass and bring assumpsit for goods sold and delivered. This may be so where defendant lays no claim to the goods, and the trespass is wholly wanton on his part. But when he claims them as his own, or claims a right to the possession of them, and justifies the taking on that ground, trespass and not assumpsit is the proper remedy. In a case of pure trespass, by which I mean one committed without color of right to the property taken, the court may well say to defendant, You shall not be permitted to defeat the action by showing you took the goods without intending to pay for them, or with an intention to do a wrong with which the plaintiff, by putting a more charitable construction on your conduct, has not thought proper to charge you. This, I think, is all that is meant by waiving the trespass and suing for goods sold and delivered. There is no objection to such a course when the trespass is wholly separate from the right of property; but when it is mixed up with the right of property, and the question of trespass or no trespass depends on that right, and must stand or fall with it, the trespass can not be waived, because none is admitted; and the law will not imply a promise to pay, as defendant took the goods in his own right.

The case at bar does not involve the right to personal property, but the right of the public to an easement over plaintiff's land. If the stream was navigable when the canal was dug, the public still has a right to use it; otherwise not, unless it it has since been dedicated to the public.

It was urged on the argument, as a reason why the court should sustain the present action, that in trespass the plaintiff could recover nominal damages only. I do not think so. In trespass for breaking and entering his close,

he may allege and prove the use of the canal by defendants as special damages.

*Judgment affirmed.*