This is an appeal from the allowance of a claim against the estate of Robert J. Pierson, deceased, for services alleged to have been rendered to Mr. Pierson by four of his nephews — Roderick, Robert Jr., Dewey, and Donald Pierson. The joint claim of these four nephews was disallowed in the probate court but upon appeal to the circuit court and on trial by jury the claim was allowed in the sum of $2,180.83. The administrator of the estate has appealed.
It is conceded that the claimants, herein designated as plaintiffs, have not proven an express contract; but they do assert the right to recover jointly on an implied contract for services rendered by them incident to the operation of their deceased uncle's 40-acre farm from April, 1925, to the time of their uncle's death in February, 1936. At the time of the death of Robert J. Pierson, these claimants were respectively 18, 24, 25 and 27 years of age. It thus appears that at the beginning of the rendering of such services all of the plaintiffs were minors. But the undisputed testimony is that they had been emancipated and whatever earnings accrued to them were *Page 421 
their property regardless of their minority. They lived at the farm home of their parents, which was located something more than a half mile cross-lots from the residence of Robert J. Pierson. Counsel stated in court that Mr. Pierson was 76 years of age at the time of his death. He had been in ill health for a number of years prior to his death; and his wife had predeceased him by about one year. They had no children. During much, if not all, of the period covered by the alleged services Mr. Robert J. Pierson was unable to do the general work upon his farm. The testimony is quite conclusive that he depended almost wholly upon his four nephews to do the necessary work on his 40-acre farm, about 20 acres of which was tillable; and in doing this work, at least to some extent, the nephews furnished tools, teams, etc.
The principal question for consideration on this appeal is whether there is, in this record, testimony sufficient to sustain the jury's finding that the deceased was obligated to pay his nephews for services rendered on the theory of an implied joint contract. Defendant made a motion for a new trial, asserting there was no evidence to support the verdict. The motion was denied.
Aside from the mother of plaintiffs and other members of the Pierson family, five witnesses were sworn in behalf of plaintiffs, and at least as to these five witnesses it can be said that so far as the record discloses they appear to have no interest in the outcome of this litigation. The following are extracts from testimony given by such witnesses:
A housekeeper who lived in the Robert J. Pierson home from October, 1934, until March, 1936, testified:
"The boys took care of the farm what I saw, hauled out the manure, plowed the land, planted the *Page 422 
crops, and harvested them. * * * Once I saw Mr. Pierson pay Dewey a dollar, and once Robert a dollar."
The operator of the local telephone exchange testified as follows:
"Q. From 1925 to his death, do you know how frequently Mr. Pierson would call his nephews who are making this claim, and ask them to come to his place?
"A. I don't think he missed very many days and some days several times a day. * * *
"Q. Do you know whether the boys responded to that when he would call them?
"A. Yes; they did.
"Q. Do you know who worked that farm, that is planted, prepared the land, planted and harvested the crops from 1925 to the death of Mr. Pierson?
"A. I never know of his having anyone else there only these boys.
"Q. You know the boys did the work?
"A. Yes, sir. * * * He (deceased) said he didn't know how he was ever going to pay these boys they had done so much for him. * * *
"Q. Did he say anything else with reference to paying them? * * *
"A. That is what he said. He said he intended to pay these boys, but he couldn't do it then. * * * He had mentioned along that line a good many times — these boys had worked for him and he didn't know how or when he was going to pay."
A neighboring storekeeper testified:
"He talked with me about them (the boys) on several occasions, once about four weeks before his death, at my store, I don't recall anybody else being present. * * * He said he would pay these boys for what they had, done for him sometime. He said that very thing to me many times." *Page 423 
Another of these witnesses testified:
"He (deceased) said he didn't have very much but what he had he had figured the boys was entitled to it and should have it and they was going to have it some day."
Another witness, who operated a garage in the neighboring village testified:
"In the later years of his life he (deceased) wasn't able to do any work. He came to my garage nearly every day. I know his nephews, claimants here. For the past 10 years his nephews, Robert, Roderick, and Dewey did practically all the work on his farm. * * * He (deceased) said, 'I don't know what Flora (wife of deceased) and I would ever have done had it not been for them. * * * The sad part of it is, I have never been able to pay them, but some day when I am through with it they will get their pay.' * * * I have heard him make a remark similar to that several times."
The mother of these plaintiffs gave the following testimony:
"He (deceased) told me he didn't have the money to pay them and that he would pay them when he could. * * * I don't remember the date, it was before he was taken to his bed. * * * At one time I was up to his place and I think his wife was present. Speaking of the claim by my boys here, he said they would get their pay sometime. * * * He was in very poor health during these 10 years."
This witness further testified that she never saw deceased make any payment to plaintiffs, that they did not keep any record of the work they did for their uncle, and that "they never asked him to be paid."
In determining whether the record is sufficient to sustain the finding of the jury of an implied contract *Page 424 
it must be borne in mind that these plaintiffs, although they were nephews of the deceased, did not live in a family relation with him. The somewhat distant relationship did not give rise to a presumption that plaintiffs' services were to be gratuitous.
"Where the relation is that of uncle and nephew, without more, the ordinary rule obtains that the law presumes that the services are to be paid for; and it is a question for the jury whether the circumstances under which the services were rendered are such as to overcome the ordinary rule. Indeed, the only effect of the relationship seems to be to make the ordinary rule more easily rebuttable than is commonly the case." 28 R. C. L. p. 683.
As to distant relationship in and of itself not giving rise to the presumption that services are rendered gratuitously, seeIn re Wigent's Estate, 189 Mich. 507; In re Rader's Estate,234 Mich. 679; Morton v. Rainey, 82 Ill. 215 (25 Am. Rep. 311). This latter case involved the claim of a nephew against the estate of his uncle, and the court said:
"Where a child remains with a parent after majority and in the same apparent situation as when a minor, in the absence of a contract, no recovery can be had for services rendered. * * *
"But in this case the deceased was not the parent of appellee, and the rule that would ordinarily govern in a case of that kind, does not control the facts of this case."
In the instant case there did not exist a relationship between the plaintiffs and Robert J. Pierson, the deceased, which gave rise to a presumption that plaintiffs' services were gratuitous, nor does the record contain testimony establishing any other fact or circumstance from which such a presumption would arise. In such a case beneficial services having been rendered and accepted, a promise to pay *Page 425 
therefor is implied. Hosmer v. Wilson, 7 Mich. 294
(74 Am. Dec. 716); Ward v. Warner, 8 Mich. 508; Donovan v. Halsey FireEngine Co., 58 Mich. 38; Pupaza v. Laity,268 Mich. 250.
"A contract is implied where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction. Where there is no express contract a contract may be implied in fact, where one engages or accepts beneficial services of another for which compensation is customarily made and naturally anticipated, and although there be no express stipulation between the parties for wages or price the law implies an understanding or intent to pay the value of the services rendered." Miller v. Stevens, 224 Mich. 626.
On the question whether the testimony presents an issue of fact for the jury as to there having been an implied contract, the instant case is well within the decisions of this court in the following cases: Sammon v. Wood, 107 Mich. 506; Ashley v.Smith's Estate, 152 Mich. 197; Maynard v. Schrumpf's Estate,192 Mich. 494; In re Scully's Estate, 199 Mich. 181.
But appellant presents the further contention that the testimony in this case will not sustain recovery by plaintiffs as joint claimants. In this connection appellant asserts that because of their varying ages and other circumstances plaintiffs must have rendered unequal services, and there being no evidence of an assignment of their respective claims, the separate and individual claims of plaintiffs cannot be combined and collected as a joint claim. This question was first raised on the motion for a new *Page 426 
trial. A review of the record discloses that almost uniformly the matter of these services and paying for the same was referred to in a collective or joint manner; and we think it cannot be said that there is not sufficient testimony in this record to sustain the finding not only that there was an implied contract to pay, but that such implied contract was one in which plaintiffs were jointly interested.
Other questions raised by appellant and discussed in the brief have been considered, but we find in them nothing which would justify reversal of the judgment entered in the circuit court, which should be affirmed with costs to appellees.
BUTZEL, J., concurred with NORTH, J.