HOAGLAND
v.,
MOORE.

HOAGLAND and Others *v.* MOORE.

If any of the evidence, which is·contradictory, conduce to prove the plaintiff's case, and he obtain a verdict, the refusal to grant to the defendant a new trial, on account of the insufficiency of the evidence, will not, except in extreme cases, be available in error. And where a new·trial is applied for· on account of excessive damages, and refused, the damages must be outrageously excessive, or a Court of error will not interfere.

In the case of a special contract, one party cannot, by a part performance only of his part, sue for and recover, in indebitatus assumpsit, for the part he has performed. But if he perform a part of what he was to do, and be prevented from performing the residue by the conduct of the other party, he may abandon the contract and recover for what he has done.

*Saturday, May 10.*

APPEAL from the *Scott* Circuit Court.—Indebitatus assumpsit for goods sold and delivered; a count on a quantum valebant; and one on an insimul computassent. *Moore* was the plaintiff below, and *Hoagland, Hall,* and *Ballard,* were the defendants. Plea, non-assumpsit. Verdict and judgment for the plaintiff. ·

HOLMAN, J.—This case was referred to arbitrators who made an award, which was afterwards set aside by the Circuit Court, but on what grounds does not appear. The presumption is that the Circuit Court acted correctly; so that it is now too late to suggest that this decision was erroneous, without showing in the record the grounds on which that suggestion is made. The plaintiff obtained a verdict for 60 dollars. The defendants moved for a new trial, which was refused and a bill of exceptions taken, in which the whole of the testimony is set forth; of which the following is the substance:—

*Abraham Poor* stated, that he was present when a contract was entered into between the plaintiff and the defendants. The plaintiff agreed to sell the defendants 100 hogs, and the corn in a certain crib, the quantity not known. The defendants were to pay 100 dollars for the hogs, and 50 cents per bushel for the corn. He heard something said between the parties·about the payment of 20 dollars immediately, but did not recollect, particularly, what it was. *Jane Calvin* stated, that she was present when the contract was made. The defendants were to have the hogs for 100 dollars, and the corn in

the crib, supposed to be 200 bushels, for 50 cents per bushel. They were to pay 20 dollars immediately, and execute their notes for the balance payable in one year. *Polly Moore* testified to the same facts. (She and *Jane Calvin* are daughters of the plaintiff). *Nathaniel Poor* stated, that he was present when the hogs were delivered to the defendants; that there was a conversation about the obligations for the purchase-money, in which *Hoagland* observed that it was too late to execute the notes, to which the plaintiff made no reply. He heard nothing said at that time about money. *Philip Ballard* stated, that the hogs when delivered were very poor, and could scarcely walk; that, shortly after the delivery of the hogs, and after the delivery of about 80 bushels of corn, he went with *Hoagland* to demand the balance of the corn; that the plaintiff's daughters were engaged in carrying corn out of the crib which the defendants were to have, and placing it in another; that these girls, who were the witnesses in this case, went into the house, and he saw them no more while he and *Hoagland* remained at the plaintiff's; that a conversation between the plaintiff and *Hoagland* took place about four or five rods from the house; that *Hoagland* demanded the balance of the corn of the plaintiff, observing that he, the said plaintiff, knew that he was to let him, *Hoagland*, have 200 bushels of corn in said crib, or make up the deficiency in rye; that he, the said plaintiff, knew that the whole contract depended upon his, *Hoagland's*, getting the corn; that if he could get the corn, he would comply with the contract on his part, by executing obligations, but if he could not get the corn, he would disannul the whole contract; all which was neither admitted nor denied by the plaintiff; that the plaintiff replied that he could not let him have the corn, *Hoagland* said that he would return the hogs, the plaintiff said he would not receive them; that the witness heard nothing said about money; that only two of the defendants were present, and no money or notes were tendered. *Isaac Hoffman* stated, that he assisted *Hoagland* in returning the hogs to the plaintiff's, but that the plaintiff would not receive them, but directed the witness to turn them out of his enclosure. *Jane Calvin* was re-examined and stated, that when *Hoagland* demanded the corn of her father, at the time spoken of by the witness, *Ballard*, she believed, but was not very positive, that her father said, that one reason why

May Term,
1828.

HOAGLAND
v.
MOORE.

he would not let the defendants have the corn was, because they had not paid him the 20 dollars.

The Court instructed the jury, that if they found that the defendants had failed to comply with the contract on their part, and that that was the reason the plaintiff refused to comply, the plaintiff had a right to recover for so much of his property as the defendants had received on the contract; and that the plaintiff was not bound to comply on his part, after the defendants had so refused; and that if they found, that the defendants refused to pay the 20 dollars and to execute their notes, if the same were by the contract to be done immediately, they should find for the plaintiff the value of the corn, if any was received by the defendants; unless they should find, that the corn had been fed to the plaintiff's hogs, while in the defendants' possession; but that if the defendants had made use of the corn in feeding their own stock, they were liable for the value of it.

It is strongly insisted in this case, that the evidence did not authorise the verdict; and that therefore a new trial ought to have been granted. On this subject we find it necessary to use extreme caution; as it is the exercise of a controlling power over the discretionary powers of the Circuit Court; and in cases where they generally have a far better opportunity of understanding the real justice of the case than we can possibly have. The right of a jury in estimating the weight of evidence, and the discretion of the Circuit Court in sustaining a verdict, suggested to be given against the weight of evidence, are matters with which this Court should not interfere, except on extraordinary occasions, where manifest injustice clearly appears to have been done. In this case there is contradictory evidence, which placed the credibility of the witnesses before the jury. With this we have nothing to do. When there is legal evidence that conduces to prove every material fact in a case, we must, except in extreme cases, leave the weight of that testimony with the jury, under the superintendence and control of the Court before which the testimony is given; and when that Court approves of the verdict, and refuses a new trial, there is no principle of jurisprudence that will require or permit an appellate Court to reverse the judgment. These remarks apply with their full force to the amount of damages. It ought to be

22

a case of damages, excessively outrageous, to authorise this Court to reverse the judgment of the Circuit Court, for refusing to set aside the verdict. In this case, the weight of evidence appears to have been with the defendants; but that alone is not sufficient to require a reversal of the judgment.

The instructions of the Circuit Court come next under consideration. It is a well settled principle, that, where there is a special contract, one party cannot perform a part of the contract, and, before an entire performance, sue and recover in indebitatus assumpsit for the part he has performed. But it is a rule equally well settled, that if he has performed a part of the contract, and is prevented from completing it by the acts or the failure of the other party, he may abandon the contract and recover for what he has done. Testing these instructions, as to the plaintiff's right of action, by these rules, it is evident, in the language of the instructions, that, if the defendants failed to comply with the contract in the first instance, and if that was the reason why the plaintiff refused to comply on his part, he had a right to recover for so much of his property as the defendants had received, and had failed to return. Taking this as an entire contract for the corn and the hogs, and supposing, as the plaintiff's daughters testified, that the defendants were to pay to the plaintiff 20 dollars immediately, and to give their notes for the balance; now, if after the delivery of the hogs and a part of the corn, the plaintiff refused to deliver the balance of the corn, unless the 20 dollars were paid, and the defendants failed to pay it, the plaintiff would not be bound to deliver the balance of the corn; but might consider the special contract at an end, and recover the value of his property, so received and retained by the defendants. The evidence that the plaintiff gave the non-payment of the 20 dollars as a reason for not delivering the balance of the corn, appears to us of a very doubtful character; but that does not affect the instructions of the Circuit Court. That Court could not say there was no evidence as to that fact; and surely it would not be expected, that this Court would disregard this evidence, and treat these instructions as if no such fact appeared in the case. As this was a fact that the evidence conduced to establish, it was correct in the Circuit Court to inform the jury what the law was, if this fact should be found by them. This part of the

instructions must therefore be considered as unobjectionable. The balance of the instructions, as to the quantity of corn for which the plaintiff had a right to recover, if he could recover at all, is as favourable to the defendants as they could reasonably ask. If the plaintiff proved a right of action, he was certainly entitled to the value of the corn received by the defendants, unless that corn had been fed to his hogs, while they were in the possession of the defendants. If the defendants had made use of this corn for their own benefit, the plaintiff would be entitled to the value of it.

We are therefore of opinion, that, on both these points, the instructions of the Circuit Court were correct.

*Per Curiam.*—The judgment is affirmed, with 1 *per cent.* damages and costs.

*Thompson* and *Nelson,* for the appellants.
*Farnham* and *Thornton,* for the appellee.