No. 89.—JOHN C. HOLCOMBE, plaintiff in error, vs. MARY P.
TUFFTS and another, defendants.

[1.] By deed, a *femme sole* conveys her estate, in contemplation of marriage,
to trustees to hold for her sole use until the marriage, to the joint use of
herself and her husband during their joint lives; if she survived him, then
to her and her heirs, and if he survived her, then to him and the children of
the marriage, if any, jointly, during his life; if no children or issue, then to
him for life; and *there being issue or children* of the marriage, to them and
their heirs forever, and there being no children or issue from and after the
death of the husband, to her right heirs. The marriage was solemnized,
and the wife died before the husband, leaving children, who died before
the husband: *Held*, that a life estate was conveyed to the husband and
children, with remainder in fee to the children; that the limitations created
a vested remainder in the children at her death, and that at the death of the
husband, the property went to the heirs of the children, and not to the right
heirs of the settler.

In Equity.   Decision on demurrer, by Judge MERRIWETHER,
in Jones Superior Court, October Term, 1849.

By a marriage contract between Francis Tuffts and Charity
Garrett, the property of the wife was conveyed to a trustee, " for-
the proper use and behoof of the said Francis and Charity, du-
ring the natural life of the said Charity, and after the death of
the said Francis Tuffts, in the event of the wife's surviving him,
then to the proper use and behoof of herself and her right heirs,
forever.   In the event of the husband's surviving the wife, then
to the use of such persons as the wife might, by will or deed, ap-
point; on failure of appointment, then to the use of Francis
Tuffts, and the issue or children of said intended marriage, if any
there should be, jointly.   The said Francis Tuffts, and the said
children or issue, to receive the joint use and benefit thereof; and
if there be no children, then to the sole use of Francis Tuffts,
during his natural life; and from and after the death of the said
Francis Tuffts, there being issue or children of the said marriage,
then to the proper use and behoof of such issue or children for-
ever; and from and after the death of the said Francis Tuffts,
there being no issue or children, or appointment, then to the pro-
per use and behoof of the right heirs of the said Charity Garrett
forever."

Three children were born of the marriage; one of whom died during the lifetime of Charity Tuffts, and the other two died, of tender years, during the lifetime of Francis Tuffts, who survived his wife.

The present was a bill filed by "the right heirs" of Charity Garrett, alleging the foregoing facts, and that no appointment was made by Charity Garrett. The defendants in the bill were the widow and son of Francis Tuffts, by a second marriage.

A demurrer was filed to this bill on various grounds. The demurrer was sustained on the single ground, "that by the terms of the instrument, the property embraced therein vested absolutely in those children of the marriage who survived the mother," and this question alone is for review in this case.

CONE, for plaintiff in error, cited and commented on the following authorities:

1 *Peere Wms.* 54, 78, 333. 2 *Vern.* 427. 2 *Eq. Ca. Ab'd*, 308. *Fearne*, 43. *Pothier on Oblig.* 104. 1 *Bac. Ab't*, 641. 2 *Dallas*, 317. *Cok. Litt.* 206, 208. 1 *Salk.* 170.

4 *Kent*, 278. 1 *Term*, 645. 2 *Bos. & Pull.* 295, 297. 3 *Peters' U. S. R.* 346. 2 *Black. Com.* 154. 1 *Vern.* 83. 1 *Atk.* 361. *West. R.* 350. 3 *Atk.* 330. 2 *Bro. C. C.* 431. 3 *Vesey*, 89. 2 *Edw. V. C. R.* 75. 3 *Gill & Johns.* 265. 4 *Eng. Com. Law*, 168.

3 *Kelly*, 345. *Fearne*, 330, '1. 2 *Cruise*, 264. 7 *Term*, 438. 40 *Eng. Com. Law*, 31. 4 *Mod.* 380. 2 *Barn. & Cress.* 926. *Cunbert.* 312, '13. *Carth. R.* 272. 1 *Speer's Eq.* 366. 2 *Cowp.* 432, *note. Fletcher on Trustees*, §28. 5 *Iredell's Law*, 578. 1 *Dev. & Bat. Eq.* 487. 4 *Dev. L.* 172.

2 *Kelly*, 321. 1 *Dessaussure*, 437. 6 *Ga. Rep.* 530. 2 *Richardson's Eq.* 49. *July No. L. L.* 1849, *p.* 46. *Reeves' Dom. Rel.* 480, '83. 1 *Peere Wms.* 123, 143, 563; 663, 748. 2 *Atk.* 89. 1 *Cox*, 317. 3 *Atk.* 371, 396. 1 *Sumner*, 238. 1 *Strob. Law. R.* 133. *McMullan's Eq.* 359. 2 *Eq. Ca. ab'gd*, 392, '93. 2 *Cok.* 66. 2 *Burrows*, 1100. 4 *Ib.* 2579. 3 *Atk.* 246, 517. 2 *Wash.* 9. 3 *Munford*, 242. *Reeves' D. L.* 464. 2 *Peere Wms.* 349. 1 *Bro. Parl. Ca.* 470. 2 *Term*, 252. 1 *Vesey*, 233. 3 *Ib.* 371. 1 *Dev. Eq.* 189. 2 *Eq. Dig.* 641. 2 *Hawks*, 483. 4 *Kent. Com.* 221, '2. *Prin.* 246. 2 *Rop. Leg.* 353. 2 *Wms. Ex'rs*, 806. 1

*Tuck. Com.* 141.   14 *Serg. & Rawle,* 40.   4 *Peters,* 1.   3 *Halst.* 90.   2 *Term R.* 435.   1 *Lord Raymond,* 203.

3 *Bro. Parl. Ca.* 64.   *Fearne,* 547, 550.   2 *Doug.* 65.   3 *Term,* 484, 488.   2 *Marsh.* 161.

2 *Hill's Ch.* 3.   5 *Ala.* 578.   7 *Ib.* 592.   2 *Vesey,* 234.   1 *Vesey,* 151.   1 *Jac. & Walker,* 68.

McDonald and R. Hardeman, for defendant,. cited and com·mented on the following authorities:

*Atherly,* 151, *top page,* 79, 299.   1 *Roper,* 69, 70, 71, 387. *Fearne,* 105, 216, 364.   4 *Kent,* 201, 2.   4 *D. & E.* 39.   *Fearne,* 313, 314, 228, '9, 50, 52.   1 *Vesey, Sr.* 210.   2 *Ib.* 203, 208.   3 *Toml. Law Dic.* 334.   *Hanson vs. Graham,* 6 *Ves.* 238, 242, 249. 9 *Ves.* 507.   11 *Wend.* 271, '2, '3.   1 *Roper,* 391, '4, 414.   5 *Ves.* 209.   1 *Eng. Com. Law Rep.* 361.   *Bassett vs. Chapman,* 1 *Peere Wms.* 357.   2 *Bl. Com.* 177.

*By the Court.*—Nisbet, J. delivering the opinion.

[1.] By reference to the Reporter's statement of facts, it will be seen that Charity Garrett died, leaving two children and her husband, Francis Tuffts, surviving, without having made any appointment.   The children both died—their father, Francis Tuffts, surviving them.   He having died, and his life estate determining, the question is, whether the property embraced in the settlement vested in the children surviving their mother, and descends to their heirs, or whether it passes to the right heirs of Charity Garrett?   This is the sole question made in this record, and it depends upon the construction of the marriage settlement.   In the construction of the instrument, the well understood rule is, that the intention derived from it shall prevail, unless that intention contravenes some well settled rule of law.   If it does, the rule of law prevails, for no conveyance of property by deed, will or otherwise, can annul the laws of the State.   The *general* intention of Mrs. Garrett in entering into this settlement, clearly was to protect the estate which she owned, from the marital rights of Tuffts, her intended husband.   She did not intend the property to go to him in any event, and no provision is made for him but of a life interest.   By the deed, if she survived him, the property is

fixed upon her and her right heirs. Had that contingency happened, the trust would have been fully executed. He surviving her, there being children of the marriage, a life estate is given to him and the children, jointly; there being no children, she, in that event, gives him a sole life estate, and at his death, the property vests in her right heirs. During her life, she provides that the property shall be to the joint use of herself and her husband. In every limitation, she guards against transmitting the property to him, and throughout confines his interest to certain uses of it, during his life. The general intent seems to be manifestly as stated. The objects of her bounty, during her life and his, are himself and herself, so far as the use and profits of the estate are concerned; at her death, he surviving, there being children of the marriage, those children and Tuffts, so far as the use of the property is concerned, are the objects of her bounty. At her death, there being no children, and he surviving, he, as to that use, is the object of her bounty; but as to the fee in the property, the children of the marriage, Tuffts surviving her, are the *prime* objects of her bounty. That she intended to control the property in this settlement, so as to cast it absolutely upon her children, unincumbered by any use at his death, there can be no doubt. It is expressly declared. For after providing the before-stated interest for him, she declares, " and from and after the death of said Francis Tuffts, there being children or issue of said intended marriage, then to the proper use and benefit of said issue or children, forever." The general intent was, as we think, to protect the property from the marital right, and secure it to the children of the marriage—an intention perfectly natural and legitimate—such an one as a lady might be reasonably supposed to entertain under such circumstances. It is farther the opinion of this Court, that Mrs. Garrett intended that, upon her death, there being children or issue of the marriage, that the property should *then* vest in the children, and that the absolute and unqualified enjoyment of it, *only*, should be postponed until the death of Tuffts. She did not intend, in the judgment of this Court, to make the vesting of the property to depend upon the contingency of the children surviving their father, Tuffts; but that if upon her death, there were children *in esse,* they should be owners of the property, and that it should, thenceforth, descend to their heirs, according to the laws of the land, subject to the life interest

as before stated. The settler, we infer, did not contemplate children of the marriage who might *survive* Tuffts; because in no one single instance does she say, in terms, that their taking shall depend upon their *surviving him*. We look in vain for any express declaration to that effect. If she had intended that the vesting of the property should depend upon the contingency of their surviving him, reasonably, naturally, she would have said so. She would not have left so important an intention to implication; but no where in this deed are words used, significant of the survivorship of the children. Even in the last limitation, which is mainly relied upon to prove a contrary intention, she does not speak of issue or children, who may not be in life at his death, or who may not survive him, nor does she say upon his death, *leaving* no issue or children; but, as in all the previous limitations, she speaks of *there being* no issue or children—that is, *there being no issue or children of the marriage*. The words *of the marriage*, are not in the last limitation, but they are in the one which precedes. In that one she says, "there being issue or children of *the said marriage*," the property shall go to the children. Then, in the last limitation, she proceeds to say, negatively, "and from and after the death of said Francis Tuffts, *there being no issue or children, or appointment*, then to the proper use and behoof of the right heirs of the said Charity Garrett, forever." So that when, in the last limitation, she speaks of *there being no issue or children*, she means what she means in the preceding limitation, to wit: no issue or children *of the marriage*—as we think of the marriage born, and not of the marriage born and also surviving him, Tuffts. The contingency upon which, in this last limitation, we think Mrs. Garrett intended the property to go to her right heirs, was not the children's not surviving Tuffts, but there *being no issue or children of the marriage;* and she intended his death, if there were no issue or children of the marriage, to fix the time when the enjoyment absolutely of the property should vest in her right heirs. As in the preceding limitation, there *being* issue or children of the marriage, his death should ascertain the time at which such children or issue, or their heirs, should be admitted to the unrestricted enjoyment of the property. There is, at all events, in the last limitation, no words used which indicate her intention that, if the issue or children do not *survive Tuffts*, the property shall go to her right heirs. If such intention is not found in

that limitation, it exists no where.   The same form of expression is observed in all the limitations in the deed—*there being issue or children*.   It would seem, indeed I am satisfied, that by this expression, Mrs. Garrett intended to say, *if there shall be issue or children of the marriage*.   This idea is sustained by the language used in that clause of the deed which creates the joint life estate in the children and Tuffts.   In that clause the language is, " to the proper use, benefit and behoof of the said Francis Tuffts, during his natural life, and the issue and children of the said intended marriage, *if any there should be,* jointly."   *Issue and children,* in this clause, must necessarily mean children living during the life of Tuffts, for the estate for life is therein given jointly to him and them.   No survivorship, *ex necessitate rei,* can be contemplated here.   Now, is it not reasonable to infer that, in that clause, which gives the property to the children, the same words should have the same meaning?   The language of that clause is, " and from and after the death of said Francis Tuffts, *there being issue or children of said intended marriage,* then to the proper use and benefit of said issue or children, forever."   Why should *issue or children of the marriage* here, not have the same meaning that they necessarily have in the preceding clause of the deed.   We say, that Mrs. Garrett intended to vest the property in the children of the marriage, *at her death,* because, during her life, they could not take; for as long as she and her husband were both in life, there was a chance of her surviving him, and in that event the property, by a clause previous to that which gives it to the children, reverts to her.   If he were dead, she in life, the reversion would of course have taken place.   Taking these things into view, as well as the general intention, to wit: to protect the property from the marital right of the husband, for the benefit of her children, if she should have any, we find no room for a doubt, that Mrs. Garrett intended that, at her death, leaving children, the property should vest in them, and that as to them or their heirs, the full use and enjoyment of it should be postponed until the death of Tuffts.

Such being the intention, the next inquiry is, does it conflict with any established rule of law?   We think that it does not, but that the intention and the legal construction of the deed harmonize.   Two rules for the government of Courts in the construction of this marriage settlement, are to be noted and ob-

served. The first is, if possible, to give to it such legal construction as will effectuate the intention. The second is, not to make. a remainder contingent, which can be made to vest. The extent of the latter rule goes,. perhaps, not beyond this, to-wit: The law does not favor contingent remainders. Courts will not become astute, in order to declare a remainder contingent, but will construe the limitations liberally, with a view to declare it vested. Nor does the former rule go so far as to authorize a Court to carry into effect the intention, when it is clearly contrary to law; for declared and indubitable intentions must be defeated, if they are manifestly in conflict with the necessary legal construction. The conflict, however, must be manifest and decided; such conflict will not be vaguely inferred; it must be so palpable as to leave to the Court no alternative.

For the purposes of this discussion, remainders may be said to be vested or executed and contingent. " Vested remainders, (or remainders executed, whereby a present interest passes to the party, though to be enjoyed *in future,*) are where the estate is invariably fixed, to remain to a determinate person, after the particular estate is spent." 2 *Black. Com.* 108, '9. " Contingent or executory remainders, (whereby no present interest passes,) are where the estate in remainder is limited to take effect, either to a dubious or uncertain *person,* or upon a dubious and uncertain *event,* so that the particular estate may chance to be determined, and the remainder never take effect." *Ib.*

A familiar illustration of the former is this : If an estate be left to A for life, with remainder in fee to B, it is a vested remainder. The estate in remainder takes effect simultaneously with the life estate, a *present* interest passes to B, and the enjoyment of the estate is postponed until the death of A. There is no uncertainty as to the person, for he is named; nor as to the event, for that is fixed, to-wit :· the death of A, the tenant for life.

This settlement, to my mind, creates just such an estate; that is, a vested remainder. To prove it, I shall consider two clauses, to-wit: that which creates the life estate in Tuffts and the children, and that which gives the estate to the children. In construing this deed, I am not to be held down to *one clause;* I may consider all. Nor am I to look to the words used in any one or more clauses or limitations; but I am to consider the whole deed, and thus ascertain the legal intendment. The two which make

this a vested remainder, are the limitations which dispose of the estate, after Mrs. Garrett's death ; in fact, she died before Tuffts. With these limitations, therefore, we start, because *then* it is necessary to determine what became of the estate.   If the legal construction of these dispose of the estate, it will be conceded that it will not be necessary to look beyond them, to the final limitation clause.   Now, the event which Mrs. Garrett contemplated as possible, to-wit: her death before the death of her husband, Tuffts, having taken place; and also, another event which she deemed possible, to-wit: there being issue or children of the marriage, in life, at her death, what does she do with the estate ? That is the question.   She makes two provisions in relation to it. First, she declares, (there *being* children, note,) that it shall be held to the proper use, benefit and behoof of Tuffts, *during his natural life,* jointly with the children.   That is, beyond all cavil, the creation of a life estate in the property in Tuffts and the children, dependant for its termination, on the death of Tuffts, for it is during his natural life.   What farther does she declare concerning the property, (there *being* children, note,) this, to-wit: from and after the death of Tuffts, that it is to be holden to the proper use, benefit and behoof *of the children forever.*   Put then, these two limitations together, and what do they make ?   Why, to the eye of common sense and right reason, as well as to the eye professional, an estate for life in Tuffts, and the children for Tuffts' life, with remainder in fee to the children.   No ingenuity, it seems to me, can make anything else of them.   The interest which the children have in the life-estate, cannot affect the construction.   An estate to them, for life, with remainder to them, in fee, would no doubt be an absolute estate in them.   But it is no less a life estate in Tuffts, because they are interested in the life estate.   To him—to both him and the children, if you please— there is given a life-estate, and the fee is cast upon them.   What, then, is the estate thus created?   It is a *vested remainder.*   The *person,* to-wit: *the children,* are certain and determined, and the *event,* to-wit: *the death* of Tuffts, is certain and determinate.   The form of language used by the settler, is immaterial.   Here are all the elements of a vested remainder.   The law, in considering these elements, can give no name or attribute to the dispositions, but that which we now give.   If it be a vested remainder, the children took the fee *eo-instanti,* in which the life estate vested;

upon their death, it went, by the law of descent, to their heirs, and the plaintiffs in this suit are not entitled to it. Here is an absolute disposition of the estate. What use then, or necessity, to look farther? If, however, we do look farther, we shall find, that even by the last limitation in the deed, the estate is a vested remainder. By that limitation it is declared : "And from and after the death of the said Francis Tuffts, there being no issue or children, and no appointment, then, to the proper use and behoof of the right heirs of the said Charity Garrett." I repeat here, what I have before said, that issue or children in this clause, means the same that we hold it to mean elsewhere in this deed, to-wit : issue of the marriage, at any time, born and surviving the settler, Mrs. Garrett; and that the contingency contemplated is not the issue or children *surviving* Tuffts; but the contingency here as elsewhere contemplated, was, there being issue of the marriage; if issue, they, as I have attempted to show, take the property; if none, then it goes, by this limitation, to the right heirs of Charity Garrett. But there was issue of the marriage ; the contingency did happen; and therefore, the right heirs of Charity Garrett cannot take, under this clause in the deed.

I come now to meet, and I trust to answer, the view of this clause, taken by the learned counsel for the plaintiff in error. He claims that it creates a contingent remainder in favor of the children, and that the event upon which it depends, is their surviving Tuffts; and that the event not happening, the property passes over to the right heirs of Charity Garrett. If the right of the children to take depends upon this limitation, and conceding that they did not survive Tuffts, yet, we think the remainder vested in them; that it was executed in them at the death of their mother, and that the property, therefore, does not go over to her right heirs. It is claimed that this must be a contingent remainder, because the event upon which it depends, to-wit : the children surviving Tuffts, is uncertain. At first view, it would seem that this must needs be so, and that the counsel is right. But a well settled distinction, when applied to this case, puts upon it a new face ; that is, a distinction between that kind of uncertainty which really makes a remainder contingent, and one which is often confounded with it, to-wit : the uncertainty of a remainder ever taking effect in possession. The taking effect of a remainder in possession may be uncertain, and yet be a vested

remainder. This distinction, says *Fearne*, is not always attended to, " but is absolutely requisite to complete an accurate notion of what is in Law considered as a contingent remainder." 1 *Fearne on Remainders*, 216. The definitions which I have before given of vested and contingent remainders, from *Blackstone*, do not develope this distinction. More fully and more accurately are they defined by Mr. *Fearne :* " Wherever," says this able writer, " the preceding estate is limited so as to determine on an event which certainly must happen; and the remainder is so limited to a person *in esse*, and ascertained that the preceding estate may, by any means, determine before the expiration of the estate limited in remainder, *such remainder is vested.*" This is his definition of a *vested* remainder, and he proceeds to define what is a *contingent* remainder. · " On the contrary, wherever the preceding estate is limited, so as to determine only on an event which is uncertain, and may never happen, or wherever the remainder is limited to a person not *in esse* or not ascertained, or wherever it is limited so as to require the concurrence of some dubious, uncertain event, independent of the determination of the preceding estate and duration of the estate limited in remainder, to give it a capacity of taking effect, *then, the remainder is contingent.*" 1 *Fearne on Remainders*, 217.

The application of Mr. *Fearne's* definition of a vested remainder will prove that this is a vested remainder. The preceding estate must be limited, so as to determine on an event which certainly must happen. That is the case here. The preceding estate is the life estate of Tuffts and the children, and that is limited to determine on an event which *must* happen, to-wit: the death of Tuffts ; for " it is appointed unto men once to die."

Again, the remainder must be limited to a person *in esse* and *ascertained.* That is the case here ; for the persons to take the remainder are the children ; there is no uncertainty about the persons ; they are *in esse* and are *ascertained.* And farther, the remainder must be so limited to them, that the preceding estate *may, by any means*, determine before the expiration of the estate limited in remainder. Well, in this case the estate is so limited in remainder, that the preceding estate may, by some means, determine before the expiration of the estate in remainder, because the estate limited in remainder to the children, is a fee ; it is an unqualified estate ; it is to them and their heirs forever ; and because

the preceding estate, to-wit : the life estate of Tuffts might, in more ways than one, have terminated, not only before the expiration of the estate limited in remainder, but during the life of the remainder-men themselves. For example, the preceding estate, to-wit : the life estate, might have determined by the death of Tuffts during the life of the children, or he might have relinquished his life-estate to them. The touchstone of this question is this : *Was there a capacity in this estate limited in remainder, to take effect during the life of the children in possession, if during their life, the possession of the life estate had become vacant ?* Would the children have taken the estate had Tuffts died before them ? Suppose Tuffts had died first, can there be a doubt that they would have taken ? Not the shadow of a doubt. If they had the *capacity* to take in that contingency, the remainder was a vested remainder. The question, whether it is a vested remainder, does not depend upon *the fact* of their outliving Tuffts, but upon their *capacity* to have taken, in the language of *Fearne, by any means* which might have determined the life estate. " The *present capacity,* (says Mr. *Fearne,*) of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant, before the estate limited in remainder determines, universally distinguishes a *vested* remainder from one that is *contingent.*" 1 *Fearne Remainders,* 215 to 222. *Duncomb vs. Duncomb,* 3 *Lev.* 437. *Smith, dem. Dorimer vs. Parkhurst, Vin. vol.* 18, *fol.* 413. 2 *Cruise's Dig.* 270. 2 *Vesey, Jr.* 357. *Chitty, note* 10. 2 *Black.* 169.

Let the judgment below be affirmed.