Bigley v. Watson.

# BIGLEY v. WATSON.

## (*Nashville.*    March 19, 1897.)

1. DECREE.  *By consent.*

The rule that a decree which is not confined to the matters pre-
sented in the pleadings is subject to avoidance, does not apply
to a consent decree when the Court had jurisdiction of the par-
ties and of the subject-matter.  (*Post, p. 357.*)

Cases cited: Boyce v. Stanton, 15 Lea, 347; Gilreath v. Gilliland,
95 Tenn., 383; Rogers v. Breen, 9 Heis., 679; Randolph v. Bank,
9 Lea, 68; 101 U. S., 289; 113 U. S., 261.

2. SAME.  *Effect of disability of party to consent decree.*

The disability of coverture of a party to a consent decree, who
does not avoid it in her lifetime, will not prevent the decree
from being binding on those claiming under her after her
death.  (*Post, pp. 357, 358.*)

Cases cited: Jones v. McKenna, 4 Lea, 630; Musgrove v. Lusk, 2
Tenn. Chy., 580.

3. ESTATE BY CURTESY.  *Does not attach to a life estate.*

The husband's estate by the curtesy does not attach to lands in
which the wife has only a life estate.  (*Post, p. 358.*)

Cases cited and approved: Beecher v. Hicks, 7 Lea, 207; Alexan-
der v. Miller, 7 Heis., 81.

4. REMAINDERS.  *Vesting of, favored.*

A remainder will be regarded as vested rather than contingent
if the disposition is so obviously upon the border as to be in-
herently doubtful between the two.  (*Post, pp. 358, 359.*)

5. SAME.  *To life tenant's children not extinct until her death.*

A remainder to the children of a woman who has an estate for
life, is not extinguished until her death, although she may be
very old and childless, as the law does not assume that there
is an impossibility of issue at any age, however great.  (*Post,
pp. 360–362.*)

14 P—23

Cases cited and approved: Garner *v.* Dowling, 11 Heis., 52; 32 Am. Dec., 401; 83 Pa. St., 483.

6. SAME. *Taken by devise and not by descent.*

The rule that "one who holds the same estate by devise that the law casts on him by descent is in by descent and not by devise," has no application when the devisee is not the heir. (*Post, p. 362.*)

Case cited: Hoover *v.* Gregory, 10 Yer., 451.

7. SAME. *Extinguished and title becomes absolute, when..*

The fee is not in abeyance while a remainder is contingent under a consent decree in partition giving one party a life estate, with remainder at her death to her children then living or the issue of such as may be dead, but the fee abides with her during such contingency, and, if the line of remaindermen is extinct at her death, her title is freed from the remainder and subject to disposal by her will. (*Post, pp. 363–374.*)

Cases cited: 1 Me., 280; 9 Mass., 37; 78 Ky., 410; 16 Gray, 568, 574.

8. RULE IN SHELLEY'S CASE. *Not applicable.*

The statute abrogating the rule in Shelley's case, by providing that, on the termination of a life estate, with remainders to heirs, or heirs of the body of the life tenant, such heirs shall take as purchasers by virtue of the remainder so limited to them, gives no rights to "heirs" to whom no remainder was limited as against devisees of one who was not only a life tenant, but in whom the fee abode subject to a contingent remainder to her surviving children or issue of children, when, by the extinction of the line of her descendants during her life, the remainder failed, and her title at the moment of her death became absolute. (*Post, pp. 373, 374.*)

Code construed: § 3674 (S.); § 2814 (M. & V.); § 2008 (T. & S.).

Cases cited: Williams *v.* Williams, 10 Heis., 568; Hurst *v.* Wilson, 89 Tenn., 271.

---

FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson County. THOS. H. MALONE, Ch.

STOKES & STOKES for Bigley.

M. B. HOWELL and VERTREES & VERTREES for Watson.

CALDWELL, J. This is a proceeding in equity to set up title by inheritance to certain real estate, to remove clouds from that title, and to have an account of rents and profits. The Chancellor, hearing the cause on its merits, dismissed the bill, and the Court of Chancery Appeals affirmed his decree.

George W. Boyd died testate many years ago, and by his will, probated in 1830, gave considerable real estate to his widow and four children—one son and three daughters. The widow dissented from the will, and procured an allotment of dower. In the course of time the widow died, and the property covered by her dower passed, under the will, to the four children. Subsequently one of the daughters died intestate, unmarried, and without issue. Thereupon, the other three children, all of whom were married, and the husbands of the two daughters, filed a joint *ex parte* petition, in the Chancery Court of Davidson County, to have the real estate previously covered by the dower and that owned by the deceased daughter, partitioned among the three surviving children in equal parts. Steps appropriate to that end were taken, under the direction of the Chancellor, and final decree, divesting and vesting title, was passed in November, 1854. By this decree the title to a tract of fifty-six acres and to a town lot, as-

signed to Mrs. Sarah A. Watson, one of the sur-
viving daughters, was vested in her "for her sole
and separate use during her life, and at her death
to her children then living and the issue of such
as may be dead." Mrs. Watson then had two
children, but both of them died without issue in
her lifetime. She herself died in 1892, and by
her will devised the real estate just mentioned to her
husband, W. S. Watson, the father of her children.
He went into possession under the will, and, as a
devisee of his wife, sold the fifty-six acres, and
mortgaged a part of the town lot.

In 1895 the complainants in this cause, as heirs at
law of Mrs. Watson, filed their bill against her hus-
band and his conveyees to recover the whole of said
property, to remove his conveyances as clouds upon
their title, and to have an account for mesne prof-
its. The theory of the bill, briefly stated, is that
Mrs. Watson, having only a life estate, could not
effectively devise the remainder; and that, having left
no children nor the issue of children, the remainder
did not become vested in them, but upon her death
descended to her heirs at law.

Answering, the defendants say, in substance, (1)
that so much of the partition decree as undertook
to cut down her interest in her own land to a life
estate was *coram non judice* and void, and (2) that,
treating that decree as valid, she nevertheless had
power to devise the remainder because the contingency
upon which it was to vest never happened, and (3)

that in any event Watson is entitled to a life estate as tenant by the curtesy.

It is undoubtedly true that the partition decree is somewhat broader that the pleading. The petition under which that decree was rendered, sought only a division of the lands among the three claimants, while the decree went further, and divided the fee of Mrs. Watson into a life estate and remainder, giving the former to her and the latter to her children and their issue living at her death. It is well settled that a decree should be confined to the matters presented in the pleadings, and that an adjudication of other matters is *coram non judice*, and for that reason subject to avoidance. *Gilreath* v. *Gilliland*, 95 Tenn., 383; *Rogers* v. *Breen*, 9 Heis., 679; *Randolph* v. *Bank*, 9 Lea, 68, and cases cited.

This rule, however, does not extend to consent decrees, rendered in causes where the Court had jurisdiction of the parties and of the subject matter. *Pacific Railroad* v. *Ketchum*, 101 U. S., 289; *Railway Company* v. *United States*, 113 U. S., 261; 5 Enc. Pl. & Pr., 962; *Boyce* v. *Stanton*, 15 Lea, 347.

The decree here impeached by the defendants falls within this exception to the general rule, and must, therefore, be treated as operative in all of its parts. Mrs. Watson was in a Court of plenary jurisdiction upon her own petition, and, with full knowledge of her rights, she and her husband assented to, and, through their counsel, procured the decree in question. It matters not, in this proceeding, that Mrs. Wat-

son was a married woman at the time; for decrees entered by consent of persons under the disability of coverture or infancy, are avoidable alone by original bill, and then only for good reasons shown. *Jones* v. *McKenna*, 4. Lea, 630; *Musgrove* v. *Lusk*, 2 Tenn. Chy., 580; *Wall* v. *Bushby*, 1 Bro. C. C., 484; 2 Danl. Chy. Pl. & Pr. (5th Am. Ed.), *974.

In any and every aspect of the question the decree was binding on Mrs. Watson so long as she elected to let it stand. She did not, in fact, avoid it in her lifetime; hence, it was in force at her death, and is now binding on those claiming under her.

By the plain terms of the decree Mrs. Watson reserved to herself only a life estate. This being so, and nothing else appearing, her husband is entitled to nothing as tenant by the curtesy. Curtesy cannot attach to a mere life estate. *Beecher* v. *Hicks*, 7 Lea, 207; *Alexander* v. *Miller*, 7 Heis., 81; 2 Kent, *134.

That part of the decree which adjudged that the lands allotted to Mrs. Watson should pass, "at her death, to her children then living and the issue of such as may be dead," created a valid contingent remainder in fee. The interest given was a remainder in fee, because it comprised the whole residue of the estate (4 Kent, *198; 2 Black., 164; 2 Wash., 5th Ed., 585); and it was contingent, rather than vested, because limited to take effect in "dubious and uncertain" persons, as under Black-

stone's first class and Fearne's fourth class of contingent remainders.    2 Black., 169; Fearne, 3–9; 4 Kent, *206–7; 2 Wash., 608, 614.

It is not amiss to remark, in passing, that "the lines of distinction between vested and contingent remainders are so nicely drawn that they are sometimes difficult to be traced" (4 Kent, *204), and that, in those instances where the disposition is so obviously upon the border as to be inherently doubtful between the two, the doubt will be resolved in favor of the former, for the reason that the general law favors the vesting of estates at the earliest practicable moment.

This remainder failed because the line of remaindermen became totally extinct before the happening of the event upon which alone it could possibly have vested.    The only two children born to Mrs. Watson, the life tenant, died without issue years before her death; consequently, she died without children "then living," and there was no one to take the remainder as such.

This suit was brought, as before recited, to solve the problem of the present ownership of the property, complainants asserting their right to it as heirs at law of Mrs. Watson, and the defendants claiming it through her will to her husband.    In deciding the question, it is important to inquire, first, when the remainder fell.    If it was extinguished immediately upon the death of the longer liver of her two children, or at any other time in advance of

her own death, Mrs. Watson at that moment be-
came the absolute owner of the whole estate, and
unquestionably had plenary power to dispose of it
by will to her husband, or to anyone else subject
to his right as tenant by the curtesy. On the
other hand, if the remainder ceased only at the very
instant of her death, the controversy between the
heirs and the devisee, as to the better title, becomes
more interesting.

It is not difficult to state a case in which a re-
mainder would cease effectually anterior to the ter-
mination of the life estate. For instance, if land
be given to A for life, with remainder in fee to
B, if living at A's death, and B dies first, the
remainder is completely extinguished at the moment
of B's death, and the donor may thereafter deal
with the fee the same as if the remainder had
never been created.

Mrs. Watson was an old woman when she died,
and it is suggested that, on account of her advanced
age, she was entirely incapable of bearing other
children for years after the death of the two born
to her when younger, and, therefore, that the re-
mainder came to an end, and she was again full
owner of the land some time in advance of her
own decease, and while she still survived. This sug-
gestion, so far as involving a conclusion of law, is
unsound, because based upon an assumed impossibil-
ity of other issue to Mrs. Watson after she had
grown old. Lord Coke says: "The law seeth no

impossibility of having children'' (Coke Litt., 28), and Blackstone says: ''A possibility of issue is always supposed to exist, in law, unless extinguished by the death of the parties, even though the donees be, each of them, an hundred years old.'' 2 Blackstone, 125.

This rule of law has been recognized and applied in several American casse. In *State* v. *Lash* the Supreme Court of New Jersey briefly remarked that, ''by the common law, the possibility of issue is commensurate with life.'' 1 ·Harrison, 388 (S. C., 32 Am. Dec., 401). In a comparatively recent case the Supreme Court of Pennsylvania used this emphatic language, namely: ''The rule has stood the test of time and received the sanction of ages. . . . Nature has fixed no certain age, by years, at which a child-bearing capacity shall begin and end. . . . The presumption of law is in favor of issue, notwithstanding advanced age.'' *List* v. *Rodney*, 83 Pa. St., 483.

This Court, in deciding the case of *Garner* v. *Dowling*, said: ''It is stated in the bill that Mrs. Garner (the life tenant), is past the time of life when she may reasonably be expected to bear children; but her age is not shown, and, if it were, in legal contemplation, it is not impossible she may have children, and the contingency is not determined until her death.'' 11 Heis., 52. See, to the same effect, 2 Lead. Cases, Am. Law of Real Property

(Sharswood & Budd), 251–253, citing this case and others.

So, then, this remainder was subsisting after Mrs. Watson's children died and she grew old, and was extinguished only at her decease. Her heir and her devisee both appear, claiming under her as of that time, and dispute with each other as to the better right.

"Connected with the favor shown by the law to the heir is the rule that where a person who is heir of his ancestor is also made a devisee, by that ancestor, of the exact estate which, had there been no will, he would have taken as heir, he shall be held to be in by descent as the worthier title." 3 L. C. Am. L. Real Prop., 450.

"A devise to the heir at law is void if it gives precisely the same estate that the heir would take by descent if the particular devise to him was omitted out of the will. The title by descent has, in that case, precedence to the title by devise." 4 Kent, * 506.

"It is well settled that one who holds the same estate by devise that the law casts on him by descent, is in by descent, and not by devise." *Hoover* v. *Gregory*, 10 Yer., 451.

Manifestly, this rule with respect to the worthier title is unavailing and inapplicable in this case, for the reason that the heir at law and the devisee are distinct persons—the devise is not to the person who would take by descent in the absence of the will.

Having ascertained that the remainder created in the decree was in fee, that it was contingent, that it never became vested, and that it terminated at the death of the life tenant, and not sooner, for the lack of some one to take it, the next pertinent inquiry is: Where did the inheritance have its abode in the meantime? In the donor, Mrs. Watson, on the one hand, or in abeyance, *in nubibus*, *in gremio legis*, on the other hand?

Fearne says: "Where a remainder of inheritance is limited in contingency by way of use or by devise, the inheritance in the meantime, if not otherwise disposed of, remains in the grantor or in the heirs of the testator until the contingency happens to take it out of them." Fearne, p. 351. Kent lays down the same rule in the language following: "If a contingent remainder be created in conveyances by way of use, or in dispositions by will, the inheritance, in the meantime, if not otherwise disposed of, remains in the grantor or his heirs, or descends to the heirs of the testator, to remain until the contingency happens. The general and equitable principle is of acknowledged authority." 4 Kent, * 257.

It should be borne in mind, however, that these learned authors, in the language quoted from them respectively, refer alone to dispositions by way of use or by will, and not to all dispositions. They are not in harmony when they come to consider the residence of the inheritance pending the contingency,

if the remainder be created by common law conveyance. As to this question, there has been great contrariety of opinion, from the Year Books down to the present time.

Fearne would have the rule uniform, and have it apply alike to each of the three cases—to dispositions by way of use, by way of devise, and by common law conveyance—leaving the inheritance, in the last case, with the grantor until it could vest in the grantee in remainder. By way of criticism of what others have said to the contrary, he observes: "These opinions are founded on the assumption that the remainder must pass out of the donor at the time of the livery, and, consequently, that no estate shall remain in him after such livery; and, therefore, in case of a lease to one for life, remainder to right heirs of J. S., the remainder, they tell us, is in abeyance, or *in nubibus*, or *in gremio legis*, though by way of some sort of compromise between common sense and the supposition of an estate passing out of a man where there is no person *in rerum natura*, no object besides hard and hardly intelligible words, for the reception of it at the time of the livery, they are compelled to admit such a species of interest to remain in the grantor, or upon the determination of the estate before the remainder can take place, entitled the grantor or his heirs to enter and reassume the estate. . . . It must be an object of no small curiosity to understand how a remainder can

Bigley *v.* Watson.

pass from a donor until there exists some donee to
receive it of him; if it passes at all, the conclusion
seems rather to be, it passes to somebody; and
whilst it does not pass to anybody, one might sup-
pose that it does not pass at all.     And however
profound a solution of this difficulty may be dis-
coverable by adepts in legal lore under the expres-
sions, 'in abeyance,' '*in nubibus,*' or '*in gremio
legis,*' I cannot but think it is a more arduous
undertaking to account for the operation of a feoff-
ment or conveyance, in annihilating an estate of
inheritance or transferring it to the clouds, and after-
wards regenerating or recalling it at the beck of
some contingent event, than to reconcile to the prin-
ciples, as well of common law as of common
sense, a suspension of the complete or absolute op-
eration of such feoffment or conveyance in regard
to the inheritance, till the intended channel for the
reception of such inheritance comes into existence,
in any case, at least, where a present estate of free-
hold passes in the meantime as the immediate and
initiate subject of the operation of such conveyance.
.    .    .    To whom, then, could it have passed out
of the grantor?    And from whom could it ever
return to him?    Where is the sense in saying a
remainder must pass out of the grantor in a case
where you deny it ever passed at all to the grantee
or anybody else?    Or that livery must have its im-
mediate operation in a case where it is admitted to
have left the estate in the same plight exactly as

if it had never been made at all? Would there not be better sense in considering the disposition itself, in all these cases, as put in suspense till the event or contingency referred to decides its effect? What is there to move the subsisting estate in the land from the grantor before the alienation of it takes effect? That alienation may, indeed, rest in abeyance or expectation till the contingency or future event gives it operation. And it is that, rather than the respited inheritance, to which, during its mere potential undecided operation, the allusion of *caput inter nubiba condit* seems most applicable.'' Fearne, pp. 360–363.

Kent expresses his view in narrower limits when he says Fearne ''treated with ridicule the notion that the fee was in abeyance or *in nubibus*, or in mere expectation or remembrance, without any definite or tangible existence; and he considered it as an absurd and unintelligible fiction,'' and then for himself remarks: ''Of the existence of such a rule of the common law there can be no doubt. The principle was perhaps coeval with the common law that during the pendency of a contingent remainder in fee, upon a life estate, as in the case already stated, the inheritance was deemed to be in abeyance. . . . Though the good sense of the thing, and the weight of liberal doctrine, are strongly opposed to the ancient notion of abeyance, the technical rule is, that livery of seizin takes the reversion or inheritance from the grantor, and leaves him no

tangible or disposable interest. Instead of a reversion, he has only a potential ownership, subsisting in contemplation of law, or a possibility of reverter; and Mr. Preston insists that an estate of freehold depending on another estate of freehold, and limited in contingency, must be in abeyance, and not in the grantor. The fee passes out of the grantor, and a vested estate of freehold necessarily precedes the remainder, and the inheritance is in contingency as well against the grantor, who has no power over it, as against the person to whom the contingent remainder is limited. Mr. Preston confidently asserts that the argument of Mr. Fearne, however abstractly just and reasonable, is without authority, and contrary to all settled technical rules. Another able writer (Cornish) also contends that the doctrine of abeyance was never shaken or attacked until Mr. Fearne brought against it the weight of his eloquence and talents." 4 Kent, * 259, 260. In a note following these pointed observations are found these words: "There can be no doubt, though good sense was with Mr. Fearne, that the book authorities are against him. We cannot surmount the technical rule, if technical rules are binding in questions of property. The one in this case deduces its lineage from high antiquity. It is found in the Year Books, and is dispersed over Plowden and Coke. . . . The fee will take an occasional flight to the clouds, and cannot be stayed, for common sense is dis-

abled and pierced by the *longe fallente sagatta.*"
4 Kent, 260, note.

Blackstone employs this language: "The fee simple
or inheritance of lands and tenements is generally
vested and resides in some person or other; though
divers inferior estates may be carved out of it.   As,
if one grants a lease for twenty-one years, or for
one or two lives, the fee simple remains vested in
him and his heirs; and after the determination of
those years or lives, the land reverts to the grantor
or his heirs, who shall hold it again in fee simple.
Yet sometimes the fee may be in *abeyance*—that is,
as the word signifies, in expectation, remembrance,
and contemplation in law; there being no person *in
esse* in whom it can vest and abide; though the law
considers it always potentially existing, and ready to
vest whenever a proper owner appears.   Thus, in a
grant to John for life, and afterwards to the heirs
of Richard, the inheritance is plainly neither granted
to John or Richard, nor can it vest in the heirs of
Richard till his death, *nam nemo est haeres viventis;*
it remains therefore in waiting, or abeyance, during
the life of Richard.   This is likewise always the
case of a parson of a church, who hath only a life
estate therein for the term of his life; and the in-
heritance remains in abeyance."   2 Blackstone, 107.

Without noting any distinction as to this ques-
tion between conveyances by way of use and dispo-
sitions by will on the one side, and common law
conveyances on the other, but seemingly treating them

all as in the same plight in this matter before the law, a recent author speaks thus: "It was also involved in doubt, in early times, what became of the fee while the remainder continued to be contingent. Until the contingency happened, the contingent remainder was deemed a mere possibility—a chance of getting an estate, rather than the estate itself. It was considered an executory interest, the title to which only vested when the contingency happened. Some of the older authorities held that the title remained, to use their quaint expressions, *in nubibus*, *in gremio legis*, etc. In other words, the title is kept in abeyance while the remainder is contingent. But the modern authorities are inclined to hold that it remains in the grantor, and that he is not divested of the title in remainder until the contingency arrives." Tiedeman on Real Property, Sec. 411.

The cases cited to the proposition contained in the last sentence are *Shapleigh* v. *Pilsbury*, 1 Me., 280, and *Rice* v. *Osgood*, 9 Mass., 37. Each of them involved the construction of a grant to the ministry, and held that the title to the fee remained in the grantor until the happening of the event upon which it could vest; and, to this extent, there seems to be a departure in both cases from the rule announced by Blackstone in the last sentence quoted from him *supra*.

The latest pertinent case discovered by our research was before the Supreme Court of Kentucky. In the course of the opinion, and as the legal basis

of the decision, the Court said: "That an estate in
fee may be made to pass out of the grantor, so as
to remain in abeyance, in the clouds, in no person,
pending the existence of a particular estate, seems
to be well settled, notwithstanding the able argu-
ment of Mr. Fearne to the contrary." *Bohon* v.
*Bohon*, 78 Ky., 410. The instrument under which
the litigation arose in that case was a common law
conveyance, and not a will or a deed by way of
use.

Such are the leading authorities on both sides of
this vexed question. They preponderate in favor of
the proposition that, by a rule of the ancient com-
mon law, the fee in the supposed case was left in
abeyance rather than in the grantor. But they, at
the same time, show with greater preponderance that
the reverse would have been far more just and
reasonable, and it is truly a matter of no small
wonder that this purely technical rule should have
survived the assault of Fearne for a single day.

All the authorities agree, as they must of neces-
sity do, that something must be in abeyance be-
tween the time of the common law conveyance and
the happening of the event upon which the contin-
gent remainder must either cease entirely or become
vested. The disagreement is in relation to the
identity of that creature. The majority of the
writers say it is the fee in the land, while the
minority, with the better reason, say it is the con-
veyance of that fee. The majority say the fee

leaves the grantor when he makes the deed, and wanders, none know where, pending the contingency, and then vests or reverts, as the case may be; and the minority say it remains in the grantor, and that the deed becomes effective to pass it from him only when there is some one entitled to receive it.

The latter view is acknowledged and adopted by all when the instrument is a conveyance by way of use or a disposition by way of devise; and the only impediment in the way of its application to a common law conveyance is an ancient technicality, whose existence some forcibly deny, and which is confessed by its supporters to be against "the good sense of the thing" and against "the weight of liberal doctrine" as well.

Conceding the original existence of this technical rule and its firm place in the ancient common law, it may well be asked whether or not it deserves perpetuation in these modern times, when many of the technicalities and fictions of the common law of real property have passed away, and when every tendency is justly toward simplification of legal rules and uniformity of construction and procedure; and we would answer in the negative.

It must be remembered that the instrument here involved is not a deed in use or a will, or a common law conveyance, but a decree of Court, and in that sense *sui generis*. It partakes, however, to some extent of the nature, and possesses in some degree the elements, of both the first and the last. It is,

in a measure, like a deed in use, and also like a common law deed, and, at the same time, different, otherwise, from both of them.

One of three tenants in common joins with the others in partition proceedings, and therein procures a decree vesting the title to her allotted share in herself for life, with remainder at her death to her children then living, and the issue of such as may be dead. Thus, she may be said to have bound herself to stand seized to her own use for life, and to preserve the fee while she lived, so that the possession and ownership might pass to the intended remaindermen, if *in esse*, at her death; and, in this view, the inheritance, in the meantime, continued its abode in her, and, because there was no remainderman to take when she died, the remainder then ceased forever, and the will, which she had made to her husband, became operative and passed to him the whole estate.

In the case of *Loring* v. *Eliot*, it appeared that Mrs. Hildreth, before marriage, conveyed her land to her father in trust, for the use of herself for life, with remainder to her children if she should leave any. Having no children when she came to die, she undertook to dispose of the land by will. After her death her heirs at law claimed the land, and her devisees also claimed it. In deciding the controversy, the Court held that Mrs. Hildreth had an equitable reversion which she could lawfully devise, and that the claimants under her will were

entitled to a conveyance from the trustee. 16 Gray, 568, 574. In so far as the decree involves the idea of a use or a trust, it is essentially different from a common law conveyance, and it is like a common law deed and unlike a conveyance by way of use, in that there is no interposition of a third person to stand as a technical or active trustee. Other points of similarity and dissimilarity need not be mentioned.

It is said for the complainants that this case must be controlled by the statute abrogating the rule in Shelley's case; but that cannot be so, for the reason that the facts here—the decree and what followed—do not present the question intended to be answered by that enactment. The rule mentioned was abolished in this State by Sec. 1, Ch. 91, Acts 1851–52 (*Williams* v. *Williams*, 10 Heis., 568; *Hurst* v. *Wislon*, 89 Tenn., 271), which is as follows: "Where a remainder is limited to the heirs, or to the heirs of the body of a* person to whom a life estate in the same premises is given, the persons who, on the termination of the life estate, are heirs, or heirs of the body of such tenant, shall take as purchasers, by virtue of the remainder so limited to them." Code, § 2008; M. & V., § 2814; Shannon, § 3674. Obviously none of the claimants in this case were contemplated as beneficiaries under the partition decree—they were in no sense embraced as remaindermen—hence the statute has no application to them. Those to whom it applies "shall take

as purchasers, by virtue of the remainder so limited to them," and not as heirs of the life tenant. Complainants had no remainder limited to them, and for that reason they can take nothing "by virtue of the remainder." The object of the statute was to give the remainder exactly the effect indicated by the grantor or testator, and in the very persons intended by him, and to prevent it from passing otherwise, or to different persons.

Affirmed.