Davis, J.
There can be little or no contention in regard to the rules of construction which may be resorted to in the effort to ascertain the true meaning of this will.. The chief source of debate between the parties is as to which of them, and how, they may be applied to best effectuate the intention of • the testator. All agree that the testator’s intention when once ascertained must control, if the intended provision is lawful; and that such intention must be sought in the terms of the whole will. Yet it must be conceded that if the language of the will, when all of its parts have been considered, remains ambiguous, the construction must finally be determined by calling to our aid such rules of interpretation as the reasoning and experience of the courts have wrought out and established b)^ common consent as tending to the uniform administration of justice. To express these thoughts in another way, technical rules may be used as aids to interpretation but can not control if they be in conflict with the apparent intention of the testator.
The controversy in this case arises from the following clause of the will. “After the death of my wife I desire that the whole of my property both real and personal be sold by my executor and after expenses are paid to distribute equally to my legal heirs.” The contention on the part of the defendant in error, Denney, is that the -bequest *367 to the legal heirs of the testator vested at the death of the testator. On the part of the plaintiff m error it is insisted that the bequest is future and contingent and that it did not vest until the time for distribution.
The testator had in contemplation all of his property and all of his family when he made this will; for his declaration is, “ will and bequeath to my wife, Mary A. Barr, the whole of my estate, both real and personal, for her use and benefit during her natural life, except as follows;” then he provides for payments to equalize the amounts received by his children. He makes no gift over, either by remainder or executory devise; but looking to the future, he says, “After the death of my wife I desire that the whole of my property, both real and personal, be sold by my executor and after expenses are paid to distribute equally to my legal heirs.” There is nothing further in the will to explain or qualify this clause. Although he was careful to equalize advancements among his children and named several -of them, lie makes no devise or bequest specifically to any of them nor to all as a class, but requires that his executor, after the termination of the life estate, shall convert the whole estate into personalty, and after expenses are paid, shall distribute equally to his legal heirs. The fund cannot be created, nor the extent of the interest in it be determined until the life estate has terminated, the property converted and the expenses paid. This will was made when death was imminent. The testator died in less than three weeks afterward. Although he had his children in mind the moment *368 before he dictated this provision, yet, looking into the indefinite future and perhaps remembering that some of them might predecease their mother —the event which actually did happen — he refrained from bequeathing the property to his children, by name or as a class, or expressly to his next of kin or heirs at law who might be such at the time of his decease, but broadly, and it would seem with a distinct and rational purpose, directed his executor “to distribute equally to my legal heirs,” an expression exactly equivalent to a direction to make distribution at the time stated according to the statute of descents and distribution. Hence the most natural interpretation of this will is that the testator bequeathed nothing after the expiration of the life estate and contented himself with the expression of his desire that the property should all be converted into personalty and then distributed equally among those who might then be his legal heirs.
This interpretation of the will is made entirely clear, we think, by further considerations from the technical point of view. We have already adverted to the fact that 'there is no gift in praesenti tc the testator’s heirs. If it were so the interests would be vested and would be contingent only in respect to the time of possession and enjoyment. Of such a nature is -the case of Linton v. Laycock, 33 Ohio St., 128, which is so much relied upon by the defendant in error, and Collier v. Grimesey, 36 Ohio St., 17. But if there is a gift over in futuro after the expiration of an intermediate estate, not to specified individuals or to a definite class, but to persons not ascertained or not in *369 being at the time of the bequest, the legacy is con-ting'ent and does not vest until the time of distribution. 4 Kent, 207.
In Richey, Exr., v. Johnson, 30 Ohio St., 288, this court had under consideration a will in which the testator devised to his wife for her natural life the use of a farm and directed that after her death his executors should sell the farm and divide the proceeds equally between the testator’s brothers and sisters “and their heirs.” It was held that “the gift implied in the direction to divide the proceeds between the designated parties is a gift of personalty; but as the fund could not be raised until the death of the widow, and was to be divided between persons then living, the interest of the legatees therein remained contingent till that time.”
In Tennessee it was held that a devise to a widow for life and at her death to the heirs at law of the testator, creates a contingent remainder and the estate goes in fee to such persons only as at the widow’s death answer to the description of heirs at law of the testator; and the court cited with approval Bigley v. Watson, 98 Tenn., 358, 359. The court said: “The chancellor treated the remainder as vested, but the Court of Chancery Appeals was of the opinion that it' was contingent. We concur in the latter view. The remainder was contingent, because the testator obviously intended the land to be divided at the death of his widow among such persons as should then sustain to him the relation of heirs at law. The remaindermen are to be ascertained not at his death, but at the death of his widow, the life ten *370 ant; and they are to be such persons as would at that time be his ‘heirs at law.’ At his death, when the will took effect, those persons were ‘dubious and uncertain;’ therefore the remainder must be contingent.”
.In New York, the court of appeals held, in a case in which the testator left a large estate,- both real and personal, giving to his widow a life estate and half the income of all his property of every kind, and to his ‘legal heirs” the remainder of the income accruing during the life of his wife after the payment of all taxes, assessments and' other charges against his estate, that the words “legal heirs,” as used in the will, meant those who would take in case of intestacy and in the portions prescribed as under the statute of distributions. Woodward, v. James, 115 N. Y., 346. In another case the same court, Matter of Crane, 164 N. Y., 71, per Parker, C. J., held that where, “aside from the direction to the executors or trustees to divide and distribute the estate upon the death of the widow, there are no words importing a gift, and where the only gift is found in a direction to divide, or pay, at a future time, the gift is future not immediate; contingent and not vested.” There are many other cases of the same import, both in this country and m England. These well settled principles of law, with the considerations heretofore expressed with regard to the intention of the testator as shown in this will, would seem to conclusively establish the interpretation which we have reached.
But the counsel for the defendant in error, Denney, insists that although there may be no gift in this will except as implied from the direction to *371 pay after the death of the widow and the conver-' sion of the property into personalty and the.payment of the expenses, yet that the vesting of the interest to the legatees is immediate, because the interest is postponed only as to its enjoyment in order to let in a prior life estate. And he seems to rely upon the case of Linton v. Laycock, 33 Ohio St., 128, as supporting his contention. As we have already said, that case was distinctly different from the present one in that, in that case the direction to divide and distribute was a direction to divide and distribute “amongst all my children then living or their heirs when the youngest child is twenty-one years of age,” etc. And from that language the court held, as expressed in the fourth proposition of the syllabus, that: “A devise to one when he arrives at a given age — sthe intermediate estate being devised to another — vests on the death of the testator, and is not defeated by the death of the devisee before the specified age. The words of futurity importing contingency, are not necessarily inconsistent with the immediate vesting of the estate, but may be regarded as merely postponing the possession.” The court regarded the direction in the will to divide the estate among specified devisees as disclosing a gift in praesenti, which was to ripen into possession “'when the youngest child is twenty-one years of age;” and as an aid to that construction the court resorted to the rule that, “words of seeming condition will, if they can bear that construction, be held to have the effect of postponing the right of possession only, and not the present right to the estate.”- In the present case the words of condi *372 tion will not, in our. judgment, bear such a construction nor permit the application of that rule. The doctrine of Richey, Exr., v. Johnson, 30 Ohio St., 288; Sinton v. Boyd, 19 Ohio St., 30; Hamilton v. Rodgers, 38 Ohio St., 242; and not that of Linton v. Laycock, supra, is applicable to and decisive of this case.
The judgment of the circuit court is reversed and that of the court of common pleas is affirmed.

Reversed.

Crew, C. J., Spear, Shauck and Price, JJ., concur. 1